(No. 21960.—

ROBERT IRVING WINTER, Appellee, *vs.* EDWARD J. BARRETT, Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed May 10, 1933.*

JONES, J., specially concurring.
DUNCAN, J., dissenting.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and ROYCE A. KIDDER, of counsel,) for appellants.

LEROY M. GREEN, I. H. STREEPER III, FRANK G. THOMPSON, ROY F. HALL, and ROSCOE FORTH, for appellee.

Per CURIAM: On March 29, 1933, Robert Irving Winter, a resident tax-payer of Madison county and a retail merchant there engaged in selling tangible personal property at retail, filed a petition for leave to file a bill in the circuit court of said county, on behalf of himself and all other tax-payers similarly situated, against appellants, Edward J. Barrett, Auditor of Public Accounts, John C. Martin, State Treasurer, and Joseph J. Rice, Director of Finance of the State, and the State's attorney, sheriff and other county officers of said county, to restrain and enjoin the disbursement of public funds of the State appropriated by an act of the General Assembly approved March 22, 1933, commonly known as the Sales Tax act, and the collection of the tax imposed by that act and the enforcement of the penalties thereby imposed. On April 8, 1933, leave was given by

the court to file the bill, and it was filed. Leave was also given to file certain amendments to it, and they were filed. It was alleged in the amended bill, in substance, that section 1, and each and every one of the provisions of the act, including its title, violate and conflict with the constitution of Illinois and the constitution of the United States. To the amended bill appellants filed a general demurrer, after the bill was dismissed, as to the county officers aforesaid. After a hearing the demurrer of appellants was overruled. They elected to stand by their demurrer. The court found and decreed that the act was unconstitutional and void. The court in its decree restrained and enjoined the Director of Finance from making any expenditure or incurring any expenses by reason of the act and from collecting the tax thereby purported to be levied; restrained and enjoined the Auditor of Public Accounts from drawing any warrant for the expenditure of any money appropriated by the act; restrained and enjoined the State Treasurer from countersigning any warrant or paying out any money on any warrant drawn against any appropriation made by the act, and restrained and enjoined these three appellants "from doing any act or thing toward the collecting of said tax or expending any money or enforcing any penalties provided for in said act." This is an appeal from that decree.

The sole question presented for determination by this court is whether or not the act aforesaid is constitutional. By his amended bill appellee alleges that the act in question is unconstitutional and void, and specifically alleges that it violates section 2 of article 2, sections 13 and 17 of article 4, section 16 of article 5, and sections 1, 2, 3 and 6 of article 9 of the constitution of 1870, and section 1 of article 14 of the constitution of the United States. He also argues that other sections of the constitution are violated by the act.

Excepting the enacting clause, we deem it proper and necessary, for reasons which we think later will clearly ap-

pear, to set out the entire provisions of the act, including the title thereto, which here follow:

"An act in relation to a tax upon persons engaged in the business of selling tangible personal property at retail, the disposition thereof and making certain appropriations in connection therewith.

"Section 1. For the purposes of this act:

" 'Tangible personal property' does not mean or include farm products or farm produce sold by the producer thereof or motor fuel as defined in the Motor Fuel Tax law approved March 25, 1929, as amended.

" 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to the consumer for use and not for purposes of re-sale, in any form, for a monetary consideration or for a promise to pay in money. Transactions whereby the possession of the property is transferred but the seller retains the title as security for payment of the selling price, shall be deemed to be sales.

" 'Selling price' means the price paid or to be paid without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever. In the case of sales in which the consideration is partly money and partly something other than money, the selling price shall be only that part paid or to be paid in money.

" 'Department' means the Department of Finance.

" 'Commission' means the Illinois Emergency Relief Commission.

"Sec. 2. A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of three per cent of the gross cash receipts from such sales in this State of tangible personal property made in the course of such business on and after the first day of the next calendar month after the taking effect of this act and prior to July 1, 1935. However, such tax is not imposed upon the privilege of engaging in any

business in interstate commerce or otherwise which business may not, under the constitution and statutes of the United States, be made the subject of taxation by this State.

"Sec. 3. On or before the 15th day of the second calendar month after the taking effect of this act, and on or before the 15th day of each calendar month thereafter until but not including August, 1935, every person engaged in the business of selling tangible personal property at retail in this State during the preceding calendar month shall make a return to the department stating:

"1. The name of the seller;

"2. His address or the address of his place of business;

"3. The total sales at retail of all tangible personal property sold by him in the course of such business during the preceding calendar month;

"4. The total cash amount refunded by the seller during the preceding calendar month to purchasers on account of tangible personal property returned to him, upon the sale at retail of which, the tax herein imposed had been paid;

"5. The total cash receipts during the preceding calendar month from the sale at retail of tangible personal property made in the course of such business on and after the first day of the next calendar month after the taking effect of this act;

"6. The total amount of sales at retail of tangible personal property during the preceding calendar month, made in the course of such business payment for which was not made to the seller during the preceding calendar month; and shall at the same time pay to the department the amount of the tax herein imposed. However, the item of cash refunds shown as provided herein above in subdivision 4 of this section shall be allowed as a credit against the total cash receipts as provided in subdivision 5. Such return shall be made on forms prescribed and furnished by the department, shall be made under oath or affirmation and shall contain such other information as the department may reasonably require.

"Sec. 4. The department shall pay all moneys received as the proceeds of such tax into the sales tax fund in the State treasury which fund is hereby created. After deducting the expenses of the Department of Finance in administering this act, the balance of such moneys shall be apportioned among the several counties of the State in proportion to their population according to the last preceding United States census. In counties having a population of over 500,000 inhabitants, the moneys so apportioned to any such county shall be expended by the Illinois Emergency Relief Commission to provide relief to residents of such county who by reason of unemployment or otherwise are destitute and in necessitous circumstances. Such relief shall be provided by distributing funds or supplies and by any other means deemed desirable by the commission. For such purpose the commission may make use of and co-operate with the county or any other municipal corporations charged by law with the duty of poor-relief and with local relief agencies. In case the commission determines that the moneys allotted to any such county having a population of over 500,000 inhabitants, or any portion thereof, at any time, are not needed for relief purposes, such moneys or such portion thereof as are not needed for relief purposes shall be paid over, by the commission, to the county superintendent of schools in such county and distributed among the common school districts of the county maintaining grades 1 to 8, 'for educational purposes in accordance with section 216½ of 'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended.

"In counties having a population of 500,000 inhabitants or less, the moneys so appropriated to any county shall be paid over to the county superintendent of schools of the county and distributed among the common school districts, the high school districts and non-high school districts in the county for educational purposes in accordance with

'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended: *Provided* that the county board of any such county, by two-thirds vote of the entire membership of such board, may determine that the moneys apportioned to such county, or any portion thereof, shall be used to provide relief to residents of the county who, by reason of unemployment or otherwise, are destitute and in necessitous circumstances. In such case, the county board shall certify its determination to the department and thereupon the department shall pay such moneys, or such portion thereof, over to the county treasurer and such money shall be expended by the county board.

"The department shall apportion such moneys among the several counties and make distribution thereof, as hereinbefore provided on or before the 25th day of the second calendar month after the taking effect of this act and on or before the 25th day of each calendar month thereafter.

"Sec. 5. If the department has reason to believe and does believe that any return showing the retail selling price of tangible personal property is incorrect, after notice to the person making the return and a hearing, it shall correct such return according to its best judgment and information, which return so corrected by the department shall be *prima facie* correct. If the tax computed upon the basis of such retail selling price, as fixed by the department, is greater than the amount of tax paid at the time the return was filed, the excess shall be paid by the person making the return within ten days after notice of the correct amount of tax, as fixed and computed by the department, is mailed to such person. In such case, if the return was made in good faith and the under-statement was not intentional or due to any fault of such person, and if the deficiency is paid within such ten days, no interest or penalty shall be added because of such under-statement. If payment is not made within such ten days, or if the under-statement was due to neglect on the part of such person, but was without

intent to defraud, to the amount of the deficiency there shall be added five per cent thereof as a penalty, and in addition, interest at the rate of one per cent per month for each month or fraction of a month calculated from the date of the notice. If the under-statement was made with intent to evade the tax, the amount of the deficiency shall be doubled as a penalty, and interest at the rate of one per cent per month or fraction of a month calculated from the date the return. was filed upon such doubled amount shall be added.

"Sec. 6. In case any person engaged in the business of selling tangible personal property at retail fails to make a return when and as herein required or to pay the tax herein imposed when due, the department, after notice to such person and a hearing thereon, shall determine the amount of such tax according to its· best judgment and information, which amount so fixed by the department shall be *prima facie* correct and such person so having failed to make such return or pay said tax shall, within ten days after notice of the amount of said tax so fixed and computed by the department, pay said tax together with a penalty of fifty per cent on the amount of the tax, and said department may recover the amount of such tax and said penalty in an action of debt. The collection of such tax and penalty shall not be a bar to any prosecution under this act.

"Also in any case in which any person has failed to pay the tax herein imposed or has failed to pay the correct amount, the department may collect such tax or the amount due and the penalty thereon in an action of debt.

"Sec. 7. If it shall appear that an amount of tax has been paid, which was not due under the provisions of this act, whether as the result of a mistake of fact or an error of law, then such amount shall be credited against any tax due or to become due under this act from the person who made the erroneous payment or such amount shall be refunded to such person by the department.

"Sec. 8. Every person engaged in the business of selling tangible personal property at retail in this State shall keep records and books of all such sales of tangible personal property together with invoices, bills of lading, sales records, copies of bills of sale and other pertinent papers and documents. Such books and records and other papers and documents, shall, at all times during business hours of the day, be subject to inspection by the department or its duly authorized agents and employees. Such books and records shall be preserved for a period of at least two years unless the department in writing authorizes their destruction or disposal at an earlier date.

"Sec. 9. For the purpose of ascertaining the correctness of any return or for the purpose of determining the amount of tax due from any person engaged in the business of selling tangible personal property at retail, the department or any officer or employee of the department, designated in writing by the director thereof, may hold investigations and hearings concerning any matters covered by this act and may examine any books, papers, records or memoranda bearing upon the sales of tangible personal property, of any such person and may require the attendance of such person or any officer or employee of such person or of any person having knowledge of such sales and may take testimony and require proof for its information. In the conduct of any investigation or hearing neither the department nor any officer or employee thereof, shall be bound by the technical rules of evidence and no informality in any proceeding, or in the manner of taking testimony shall invalidate any order, decision, rule or regulation made or approved or confirmed by the department. The department or any officer or employee thereof shall have power to administer oaths to such persons.

"Sec. 10. No person shall be excused from testifying or from producing any books, papers, records or memoranda in any investigation, or upon any hearing, when or-

dered to do so by the department, or any officer or employee thereof, upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate him or subject him to a criminal penalty but no person shall be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the department, or an officer or employee thereof; *Provided,* that such immunity shall extend only to a natural person who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise under oath. No person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.

"Sec. 11. All subpœnas issued under the terms of this act may be served by any person of full age. The fees of witnesses for attendance and travel shall be the same as the fees of witnesses before the circuit court of this State, such fees to be paid when the witness is excused from further attendance. When the witness is subpœnaed at the instance of the department, or any officer or employee thereof, such fees shall be paid in the same manner as other expenses of the department and when the witness is subpœnaed at the instance of any party to any such proceeding, the department may require that the cost of service of the subpœna and the fee of the witness be borne by the party at whose instance the witness is summoned. In such case the department, in its discretion, may require a deposit to cover the cost of such service and witness fees. A subpœna issued as aforesaid, shall be served in the same manner as a subpœna issued out of a court of record.

"Any circuit court of this State, or any judge thereof, either in term time or vacation, upon the application of the department, or any officer or employee thereof, may, in its or his discretion, compel the attendance of witnesses, the production of books, papers, records or memoranda and the

giving of testimony before the department, or any officer or employee thereof, by an attachment for contempt or otherwise in the same manner as production of evidence may be compelled before said court.

"The department, or any officer or employee thereof, or any party in any investigation or hearing before the department may cause the depositions of witnesses residing within or without the State to be taken in the manner prescribed by law in like depositions in civil actions in courts of this State and to that end compel the attendance of witnesses and the production of books, papers, records or memoranda.

"Sec. 12. All information received by the department from returns filed under this act or from any investigations conducted under the provisions of this act shall be confidential except for official purposes and any officer or employee of such department who divulges any such information in any manner except in accordance with a proper judicial order or as otherwise provided by law shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred nor more than one thousand dollars or be imprisoned in the county jail for not less than one nor more than six months or be both so fined and imprisoned in the discretion of the court.

"Sec. 12½. Each person engaged in the business of selling tangible personal property at retail shall have the language hereinafter stated conspicuously displayed upon the carton, box, wrapper or other container containing such property or shall deliver to the purchaser a sales ticket upon which such language is conspicuously stamped, printed or displayed:

" 'The selling price of this property is included in receipts upon the basis of which the seller is obligated to pay three per cent to the State of Illinois.'

"No person engaged in the business of selling tangible personal property at retail shall advertise or hold out to

the public, in any manner directly or indirectly that the tax herein imposed is not considered as an element in the price to the consumer.

"The provisions of this section are deemed desirable and necessary to prevent fraud and unfair trade practices but it is the intent of the General Assembly that if one or both of such provisions be held unconstitutional and void, that such invalid provision or provisions be considered separable and that the balance of this act be given effect.

"Sec. 13. The department is authorized to make such reasonable rules and regulations relating to the administration and enforcement of the provisions of this act as may be deemed expedient.

"Whenever notice of hearing is required by this act, such notice may be given by United States registered mail addressed to the person concerned at his last known address not less than seven days prior to the day fixed for the hearing.

"All hearings provided for in this act shall be held in the county wherein the tax-payer resides or has his principal place of business.

"The circuit and superior court of the county wherein the tax-payer resides or has his principal place of business shall have power to review all questions of law and fact determined by the department in administering the provisions of this act by writ of *certiorari* to the department. If the tax-payer is not a resident of this State or has no principal place of business in this State such venue shall be in Sangamon county.

"Such writ shall be issued by the clerk of the court upon *præcipe* and it shall be served at least ten days before the return day thereof. Service upon the director, assistant director or administrative auditor of the Department of Finance shall be service upon the department. Such suits shall be commenced within twenty days after a tax-payer has notice of the department's decision in any such mat-

ter. The department shall certify the record of its proceedings if the tax-payer shall pay to it the sum of five cents per one hundred words of such record.

"Sec. 14. Any person engaged in the business of selling tangible personal property at retail in this State who fails to make a return or to keep books and records as required herein, or who willfully violates any of the provisions of section 12½ or any rule or regulation of the department for the administration and enforcement of the provisions of this act is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than twenty-five dollars nor more than five thousand dollars or be imprisoned in the county jail for not less than one month nor more than six months or be both so fined and imprisoned in the discretion of the court.

"Sec. 15. The following sums or so much thereof as may be necessary are appropriated to the Department of Finance from the sales tax fund in the State treasury for the purposes and for the periods stated as follows:

"For administering the provisions of this act:
For the biennium ending June 30, 1933 . . . . . . . . $210,000
For the biennium ending June 30, 1935 . . . . . . . 1,200,000

"For distribution to the several counties having a population of 500,000 or less in accordance with provisions of section 4 of this act:
For the biennium ending June 30, 1933 . . . . . . $10,000,000
For the biennium ending June 30, 1935 . . . . . . 57,500,000

"The following sums or so much thereof as may be necessary are appropriated to the Illinois Emergency Relief Commission from the sales tax fund in the State treasury for use in counties having a population of over 500,000 in accordance with the provisions of section 4 of this act as follows:
For the biennium ending June 30, 1933 . . . . . . $11,000,000
For the biennium ending June 30, 1935 . . . . . . 62,500,000

"Sec. 16. The appropriations herein made are subject to the provisions of 'An act in relation to State finance,' approved June 10, 1919, as amended.

"Sec. 17. Whereas, it is increasingly difficult for many owners of property in this State to pay the taxes charged against them, and it is necessary immediately to provide another source of revenue for the purpose of giving some relief from property taxes, especially for schools; and

"Whereas, as the result of unemployment, many persons in this State are destitute and dependent, and in some of the counties available funds for their relief are about to become exhausted and additional funds must be provided immediately, therefore an emergency exists, and this act shall take effect upon its passage."

Appellee, while conceding that the title and the provisions of sections 2 and 3 of the act would seem to indicate that the tax is in the nature of an occupation tax, contends that the provisions of section 12½ and the provision of section 4 creating a fund in the State treasury called the sales tax fund show that the tax is a tax on the consumer of property. He also contends that in certain cases, such as the restaurateur, and the plumber who installs plumbing fixtures, the tax is actually a tax on labor and services and is essentially an income tax. The title of the act does indicate that the tax is upon persons engaged in the business of selling tangible personal property at retail. By section 2 the tax is imposed on such persons, and the measure of the tax is fixed at three per cent of the gross cash receipts from sales of tangible personal property by such persons. Section 3 provides for returns to be made by such persons giving information from which the amount of the tax may be determined. From these provisions it appears that the tax is imposed upon persons engaged in the business mentioned. They are the persons who are required to pay the tax. They are not made the agents of the State or of the Department of Finance to collect the tax from purchasers and pay it

over to the department, but the tax is imposed on them and they are the ones who are required to pay it. By the provisions of the act they are neither required to take nor prohibited from taking into consideration the amount of tax to be paid by them in fixing the selling price of articles sold. They must pay the tax. If prior to April 1, 1933, the selling price of an article was one dollar, and thereafter the seller, taking into consideration the tax in fixing the price of the article, charges one dollar and three cents for the same article, he cannot report that the cash received from the sale of the article was one dollar and that the three cents was collected as tax, but in reporting his receipts he must report the total amount received—that is, one dollar and three cents—and pay as tax three per cent of that amount. So it appears that the tax is on the seller. The provisions of section 12½ in effect require the persons who are required to pay the tax—that is, persons engaged in the business of selling tangible personal property at retail—to give notice to purchasers that they (the sellers) are required to pay such tax measured on the amount of their sales and prohibit the tax-payers from advertising that the tax is not considered an element in fixing the price of articles sold. With the question of the validity of those provisions we are not now concerned. So far as determining the character of the tax imposed by the act, they do not indicate that the tax is on the purchasers or consumers but simply show that the General Assembly had in mind that persons engaged in business would, in fixing the price of articles sold by them, take into consideration the tax to be paid under the act, the same as they do their property taxes, rent and other expenses of doing business. No discussion is necessary to show that the name given the fund in the State treasury, into which the proceeds of the tax are to be paid, is of no significance in determining the character of the tax. It may be true that in certain instances, as in the case of restaurants selling meals, the price charged for

the tangible personal property sold is based largely on the cost of the service given, but that does not show that the tax is not on the business or occupation. The price charged for articles sold is merely the measure of the tax to be paid in such cases, as in the case of all other retailers upon whom the tax is imposed. We hold that the tax is not a property tax and is not a tax on purchasers of property but is a tax on persons engaged in the business of selling tangible personal property at retail—an occupation tax.

It is contended that the act is invalid because more than one subject is expressed in the title of the act and the body of the act embraces more than one subject, in violation of the provision of section 13 of article 4 of the constitution that no act shall embrace more than one subject and that shall be expressed in the title. The contention is that "a tax upon persons engaged in the business of selling tangible personal property at retail" is one subject, and "the disposition thereof and making certain appropriations in connection therewith" is another subject; that the act contains provisions on both of these subjects, and it is therefore wholly invalid. The first question is, Does the title of this act express more than one subject? The title clearly expresses that the subject matter of the act is a tax on persons engaged in the business of selling tangible personal property at retail. The disposition of the money raised by such tax clearly is germane to and connected with that subject, as is also the matter of making appropriations in connection with collecting the tax and disposing of the proceeds thereof. The fact that the title states some particulars directly connected with the subject matter expressed does not make it state a plurality of subjects. (*People* v. *Sargent*, 254 Ill. 514.) In *People* v. *Joyce*, 246 Ill. 124, the title of the act under consideration was, "An act to revise the law in relation to the sentence and commitment of persons convicted of crime, and providing for a system of parole, and to provide compensation for the officers of

said system of parole," and it was held to express one subject, only. In *Ritchie* v. *People,* 155 Ill. 98, the title, "An act to regulate the manufacture of clothing, wearing apparel, and other articles in this State, and to provide for the appointment of State inspectors to enforce the same, and to make an appropriation therefor," was held to express only one subject. This court has uniformly given a liberal construction to the provisions of the constitution under consideration in favor of the validity of enactments. (*Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427.) The title of the act under consideration does not express more than one subject. In *Ritchie* v. *People, supra,* this court recognized that an appropriation might be made in an act for the expense of enforcing and administering it without rendering it subject to the objection that it embraced more than one subject. In the act in question, however, appropriations are made not only for the expense of enforcing and administering the act but for the disposition of the money to be collected from the tax over and above such expenses. It is contended the appropriations so made are a separate subject matter, unrelated to the subject of the imposition and collection of the tax. As we have stated, the matter of providing how the money collected from the tax shall be used is clearly related to the subject of imposing and collecting the tax, and making appropriations from the anticipated revenue arising from the tax must also be considered a matter so closely related to the general subject matter of the act as not to constitute a separate subject within the meaning of the constitution.

Although the bill filed by appellee does not allege that the act violates the provision of section 16 of article 4 of the constitution that bills making appropriations for the pay of members and officers of the General Assembly and for the salaries of the officers of the government shall contain no provision on any other subject, it is suggested in his brief that that provision is violated by the act in making

appropriations for the expense of administering the provisions of the act as set forth in section 15 thereof. Those appropriations are not for the purpose of, and may not be used in any part for, paying the salaries of any officer of the State. No office of any kind is created by the act. Expenses are provided for by these appropriations, but none are provided, and none can be used, for the payment of any member or officer of the General Assembly or of any salary of any State officer. There is no violation of section 16 of the constitution by this act.

Appellee contends that this act violates the equal protection clauses of the State and Federal constitutions and the uniformity provisions of section 1 of article 9 of the constitution of this State. The statement in section 1 of the act that for the purposes of the act " 'tangible personal property' does not mean or include farm products or farm produce sold by the producer thereof or motor fuel as defined in the Motor Fuel Tax law approved March 25, 1929, as amended," does not define "tangible personal property" nor does the act elsewhere define that term. The language quoted does not and cannot mean that farm products or farm produce or motor fuel are not, in fact, tangible property, for it is a universally known fact that they are such. It is equally well known and universally recognized that the business of selling those commodities at retail to the consumer is the business of selling tangible personal property at retail. The legislature has no power to, by legislative enactment, declare that not to be a fact which every one knows is a fact, though it may by an otherwise valid enactment declare that for the purposes of the application of the act that which is recognized as a fact may be excluded from such application. The purpose of such provision in this act is, therefore, clearly to exempt from the application thereof those engaged in the business of selling farm products or farm produce or motor fuel to the consumer at retail. Appellee therefore contends that such pro-

vision and purpose deny to those engaged in the business of selling tangible personal property at retail equal protection of the laws and renders the act void, as in violation of the provisions of section 1 of article 9 requiring that taxes levied on occupations shall be by general law and uniform as to the class upon which it operates. Section 1 of article 9 of our constitution provides: "The General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates." Section 2 of the same article provides: "The specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution." Under this latter section it has been frequently held that the legislature may, by observing the constitutional requirements of uniformity, tax occupations other than those enumerated in section 1 of the article. *Bachrach* v. *Nelson,* 349 Ill. 579; *People* v. *Deep Rock Oil Corp.* 343 id. 388; *Bessette* v. *People,* 193 id. 334; *Price* v. *People,* id. 114.

Counsel for the People argue that since by section 2 of article 9 of the constitution the legislature may tax not only the occupations enumerated in section 1 of that article but other occupations, and may leave still others untaxed, it may put all persons engaged in the business of selling tangible property at retail in a class and may except therefrom those engaged in the business of selling farm products or farm produce or motor fuel at retail. It will be observed, however, that this act does not purport to be a tax upon the butcher, the baker or like occupations, as such, to the exclu-

sion of those engaged in other occupations. There is created but one class to whom the tax is to be applied, and that class is "persons engaged in the business of selling tangible personal property at retail." There is in this provision no limitation upon the word "persons" and it must be construed to include all persons engaged in such business, the only exemption therefrom being inferred by the above quoted language of the statute declaring that certain property shall not be included within the meaning of the term "tangible personal property." The tax levied by the act must be uniform on all of the class upon which it operates. The question therefore arises whether there is any basis for taking those engaged in the business of selling farm products or farm produce or motor fuel at retail from this class. But for the exemption sought to be made by the act, those engaged in the business of selling farm products or produce or motor fuel at retail come within the terms of the act, for they are selling tangible personal property at retail. Uniformity of taxation and equal protection of the laws require that they, too, pay this tax, unless there be a valid basis for discrimination in their favor or for considering them a different class or vocation from that into which they naturally fall.

It is argued as to the seller of farm products or produce, that his sales at retail of such property are not a part of the business in which he is engaged but are an incident thereto, merely; that his business is producing, and that he does not conduct the business of selling "to the consumer for use and not for the purposes of re-sale in any form" as sales at retail are defined in the act; that this places him in a different class from the grocer or the clothier, whose business is to sell to the consumer, and he may be exempted from the class to which the act applies, and that such exemption is founded on fact, and therefore has a reasonable basis. It will be observed that the exemption of farm products or farm produce, when sold by the pro-

ducer, from the category of tangible personal property exempts those selling those commodities from the operation of the act whether sales at retail by them are but an incident to their business of producing or are a part of the business of selling such property at retail in which they may be engaged.

Counsel for the People cite in support of their argument that there is a 'valid reason for holding that farm products or produce and motor fuel and the sellers thereof at retail belong to a different class from that created by the language of the act, the case of *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89. In that case the court had before it the question whether an act of the State of Louisiana requiring the payment of an annual license tax on all persons engaged in refining sugar and molasses denied equal protection of the laws because it provided that it should not apply to planters and farmers grinding and refining their own sugar and molasses nor to those planters who granulated syrup for other planters during the rolling season. It was held that while the act discriminated in favor of a certain class, the discrimination was founded upon a distinction in principle, in that its effect was to exempt producers from the taxation of the methods employed by them to put their produce upon the market, and that it lay within the power of the legislature to determine whether anything done to prepare a product more perfectly for the needs of the market should not be treated as an incident to its growth or production, and that the act did not deny to others engaged in a general refining business the equal protection of the laws.

It may be conceded that the right to sell is an incident to the right to manufacture or produce, and where the producer of farm products or produce engages in the business of selling at retail but so sells only as an incident to his business of producing, it cannot be said that he is within the class to which this act applies, and therefore the uni-

formity provisions of the constitution do not require that he be taxed for such sales. This act has declared, in effect, that such producer does not belong to that class no matter how he sells such products or produce. The sales of farm products generally are not to the consumer, and therefore do not come into competition with those engaged in the business of selling such commodities at retail. The occasional sale of farm products or produce at retail by the producer to the consumer, or such sales of the surplus of his produce raised for his own use, cannot be said to put such producer into the business of selling such property at retail to the consumer. Many such producers do not engage in the business of selling to the consumer but sell generally to grain or produce merchants and cannot be classed with those in the business of selling tangible personal property at retail, for such is not their business. It is different, however, with the producer of farm products and produce, such as vegetables and the like, who not only conducts the business of producing such produce, of which sales generally may be an incident, but who also conducts the business of selling his produce only to consumers at retail. It is a matter of common knowledge that there are many so engaged. He thus conducts the separate business of selling at retail in competition with other retail dealers in such commodities. He is in the business of selling tangible personal property at retail in addition to the business of producing, and the exclusion of such business from the operation of the act, under such circumstances, finds no basis in fact upon which he may be reasonably placed in a different classification from the general class of those engaged in the selling of tangible personal property at retail created by the act. He is of the class to which the act applies, just as the druggist who compounds and produces the proprietary remedies which he sells at retail is in that class, and so far as the act attempts to exclude him from its provisions it is not uniform in its application to the class on which it operates and cannot be sustained.

There is no claim that those persons engaged in the business of selling motor fuel at retail are producers or that they are not in the business of selling tangible personal property at retail. That is primarily their business. They, therefore, belong to the class to which the tax is applicable, and unless they may be said to be legally excluded therefrom the act is not uniform in its application, for it is not made to apply to them. The argument in support of the exemption of the business of selling motor fuels at retail is that a tax is already imposed on the selling of gasoline under the Motor Fuel Tax act. That tax, however, is not imposed on the business of selling gasoline but is a privilege tax assessed against the consumer of gasoline who uses it for traveling on the highways of the State and who thus pays for the privilege of so using the highways. (*People* v. *Deep Rock Oil Corp. supra.*) Those engaged in the business of selling gasoline at retail are required to collect such tax from the consumer and are paid a percentage thereof for so collecting and remitting it. Not all gas consumed is taxed, as the consumer may secure return of the tax paid by him on motor fuel not used on the highways. Unless the purchaser of gasoline chooses to use it on the highways he pays no tax on it. In any event, that tax is not levied on persons engaged in the business of selling gasoline. It is a matter of public law that hundreds of thousands of dollars have been appropriated and paid out of the State treasury to meet such refund demand, with the result that gasoline of a value many times the amount of such refund is not taxed at all, the seller thereof reaps his profit thereon and likewise receives a certain percentage of the refund tax for collecting it. The business, as such, is not subjected to any tax.

Counsel argue that since the gasoline tax is paid by the consumer and the tax here considered is, as a practical result, paid by the consumer, the seller of motor fuels may properly be said to be outside the class created by this act.

It may be observed that such argument might be also applied to the purchaser of tobacco, who pays a government tax passed on to him, though he also, in practice, pays the tax here provided against the business of selling tobacco at retail. The tax in this act is levied on the business of selling tangible personal property at retail. Sellers of motor fuel to consumers are engaged in that business. While the seller, under this act, is required to inform the purchaser that the tax is included in the purchase price, he is not required to collect it as a tax from the purchaser, but the contemplation of the act is that it be paid by the seller just as rent is paid, as a part of his overhead expense, which rent is also considered in fixing the price of his commodity.

Counsel cite in support of their argument that sellers of motor fuel are not in the class to which this act applies, the recent case of *Liggett & Co.* v. *Lee*, 53 Sup. Ct. 481. In that case an act of the State of Florida imposed a license tax against any person or corporation conducting a store within the State. The section defining a store contained a proviso to the effect that the term should not include filling stations engaged exclusively in the selling of gasoline and other petroleum products, and it was argued that that provision deprived the complainants of equal protection of the laws, since it was arbitrary and unreasonable. It appeared, however, in that case that there was also an act of the State of Florida which imposed upon the dealers in gasoline, including those conducting filling stations, a license tax based on a flat rate and also on gallonage, and it was held that in view of the imposition of a tax upon the operation of filling stations by other acts of the State of Florida, their exemption therefrom in the act in question did not violate the equal protection clause of the constitution. That case is not similar to the one before us. The fact that in this State a so-called gasoline tax is collected from the consumer for the privilege of the use of such gasoline on the highways does not put those engaged

in the business of selling motor fuel at retail, who do not pay such tax, in a different class from that created by this act and to which they naturally belong. The act, therefore, in exempting from the tax imposed, the business of selling motor fuel at retail, exempts, without basis in fact, from the class created by the act, a business indubitably belonging thereto, and so violates the uniform requirements of the constitution.

It is also contended that the act violates article 3 of the State constitution, providing for the separation of the three departments of government, and section 2 of article 2 thereof, providing that no person shall be deprived of life, liberty or property without due process of law, in its provisions contained in sections 5, 6, 8, 9, 10, 11 and 13, relating to the administration of the act and the collection of the tax. In enacting laws the legislature cannot deal with the details of every particular case, and reasonable discretion as to the manner of executing a law must necessarily be given to administrative officers. Such officers, in the performance of their duties, are frequently called upon to exercise judgment and discretion, to investigate and decide, and yet in doing so they do not exercise judicial power within the meaning of the constitution. (*Italia America Shipping Corp.* v. *Nelson, supra; Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167; *Mitchell* v. *Lowden,* 288 id. 327; *Klafter* v. *Examiners of Architects,* 259 id. 15; *People* v. *Apfelbaum,* 251 id. 18; *State* v. *Illinois Central Railroad Co.* 246 id. 188.) To constitute due process of law, orderly proceedings according to established rules which do not violate fundamental rights must be observed, but there is no vested right in any particular remedy or form of proceeding, and a general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process of law. (*Wilmot* v. *City of Chicago,*

328 Ill. 552; *Italia America Shipping Corp.* v. *Nelson, supra.*) The powers conferred upon the Department of Finance to administer this act are not arbitrary, and, so far as the general power conferred upon the department is concerned, the case is not in anywise different in principle from the cases above cited. The act provides that the method of collecting any unpaid tax and penalty may be by action of debt, and in any such case the tax-payer would have the right to a trial by jury. Provision is made for review in a court of any decision made by the department in administering the act. If in any particular, such as the power given the department to assess penalties, the act is invalid, the invalidity of the particular provision does not render the whole act void. Appellee has not been injuriously affected by any such provision, and it is not now necessary or proper to pass upon the validity of any such provision. *People* v. *McBride,* 234 Ill. 146.

It is also urged that the act is in violation of the due process of law clause of the State and Federal constitutions in that it is confiscatory. In this connection appellee refers to the allegation of his bill that on "the turnover in the sale of groceries and food products handled in grocery stores the average net profit is less than the amount of tax imposed by said act, and particularly in regard to sugar and other like necessities of life the amount of tax provided by said act is several times the amount of the net profit, and that the particular effect of said act has been that chain stores handling food products have, since said act went into effect, marked up the selling price of necessities of life, such as food products, and particularly on fast-selling articles, an average of twelve per cent to take care of said tax." As we have stated, the act does not prevent retailers from taking into consideration the tax to be paid by them under the act in fixing the price of articles and commodities sold to the consumer. A retailer is not required, as it is expressed, to absorb the tax, but he may pass the burden of

the tax on to the consumer by increasing the price of the property sold by him. He is not compelled to engage in business at a loss and his property is not confiscated by the imposition of the tax upon him. Section 4 of the act provides that the money realized from the tax, after deducting the expense of administering the act, shall be distributed among the several counties of the State in proportion to their population. It further provides that in counties having over 500,000 inhabitants the money shall be expended by the Illinois Emergency Relief Commission to provide relief to residents of such county who are destitute and in necessitous circumstances, and that "for such purpose the commission may make use of and co-operate with the county or any other municipal corporations charged by law with the duty of poor-relief and with local relief agencies." It is contended that under this provision funds may be dispensed to a private relief agency, under no restrictions whatever as to use, accounting or re-payment of a balance not used. It is, as pointed out by appellee, a violation of the due process clause of the Federal and State constitutions to take money from citizens under the guise of taxes for any other than a public purpose. (*Chicago Motor Club* v. *Kinney*, 329 Ill. 120; *Robbins* v. *Kadyk*, 312 id. 290.) It is not contended, however, that providing relief to citizens who are destitute and in necessitous circumstances is not a public purpose, and under the provisions of the act the Illinois Emergency Relief Commission can use the funds coming to its hands for no other purpose. It may use and co-operate with local relief agencies but it cannot dispense funds to such agencies except for use for such purpose.

Appellee states and contends that the act amends the act approved February 6, 1932, creating the Illinois Emergency Relief Commission, and section 1 of "An act to revise the law in relation to oaths and affirmations," approved February 25, 1874, without setting out the sections of said acts amended, in violation of the provision of section 13 of arti-

cle 4 of the constitution that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." The act under consideration is complete within itself and relates as a whole to the subject expressed in its title. It does not purport to amend or revive any other law, and if there is, in fact, by its provisions any amendment, by implication, of other laws, such incidental amendment of other laws is not a violation of the constitutional provision under consideration. *People* v. *City of Chicago,* 310 Ill. 534; *People* v. *Crossley,* 261 id. 78.

It is contended that the act is not adaptable to denominations of the United States coins and currency and is not workable. The contention seems to be that, as a matter of practice, retailers of the State have increased the selling price of articles sold by them, but that on many, if not the major portion, of sales "it is impossible for the retailer to collect the percentage of tax imposed in the bill and impossible for the consumer to make payment of said tax in the denomination issued of United States currency." This argument is without any validity, because, as we have stated, the tax is not on the consumer but on the retailer. The difficulties that a retailer may have, if he attempts to pass the burden of the tax on to his customers, in doing so in a fair and equitable manner, cannot affect the validity of the act, and competition between retailers may be relied upon to prevent prices of articles and commodities sold being raised in price more than is necessary actually to protect business men in their attempt to make a fair profit.

There is left for consideration the objections made to the validity of the provisions of the act relating to the disposition of the money collected by the tax and the appropriations made by the act for that purpose. The first point made by appellee in this connection is, that at the time the act was passed there was no section 216½ in the School act and no provision therein for the county superintendent of

schools distributing funds to high school districts and non-high school districts in his county. By an act (Senate Bill No. 157) approved by the Governor on the same day the act in question was approved, certain sections of the School act were amended and sections 216¼, 216½ and 216¾ were added thereto. By the added sections provision is made for the distribution of funds coming to the hands of a county superintendent of schools under the provisions of the act in question, by distributing such money among the common school districts for educational purposes in the proportion that the average amount annually expended by each such district for educational purposes for grades 1 to 8 bears to the total amount expended by all such districts in the county, and provision is made that after the common school districts in a county have received an amount, in any year, equal to the average annual amount expended by such districts for educational purposes, the balance in the hands of the county superintendent shall be distributed among the high school districts and non-high school districts in such county in the proportion that the total assessed valuation of each district bears to the aggregate total assessed valuation of all such districts in the county. By another act approved by the Governor on April 8, 1933, (Senate Bill No. 158,) section 49 of the Revenue act of 1898 was also amended so as to provide that the county clerk, in fixing general property tax rates for the several school districts in his county, shall deduct from the amounts certified to him by any district as its tax levy the total amount of all moneys paid to such district under sections 216½ and 216¾ of the School act. These acts having been passed at the same session of the General Assembly and at about the same time should be construed together, (*People* v. *Deep Rock Oil Corp. supra,*) and when this is done there is no difficulty in determining the intention of the General Assembly.

It is contended that section 6 of article 9 of the constitution is violated. That section provides: "The General

Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever." It is not contended that this provision is violated by the provision for distribution of the funds raised by the tax among the counties of the State according to population or by the provisions for the manner of distribution of the funds among school districts by county superintendents of schools. The argument is, that when money from the sales tax fund is paid to a county superintendent of schools and by him distributed to the various school districts in his county such money takes the place of taxes regularly levied on the property of the inhabitants of the school districts for maintenance of schools, and thus releases persons required to pay no tax under the act, of a portion of their general property taxes. If this argument were held to be good and to show a violation of the section of the constitution in question the practical effect would be to prohibit the General Assembly from imposing any tax on occupations or persons enjoying privileges. For instance, if the General Assembly should pass a law imposing an occupation tax on commission merchants, as it is given the power to do by section 1 of article 9 of the constitution, and providing that the money realized from such tax should be paid into the general revenue fund in the State treasury, the effect would be to lessen by the amount raised by that tax the amount of the general property taxes necessary to be levied for State purposes, and would release to that extent the burden of taxes on property of persons residing in townships or school districts in which there were no commission merchants. Manifestly, such a law could not be held to violate section 6 of article 9, because such a tax is expressly authorized by section 1 of that article. If section 6 of article 9 is not violated by the method and

manner provided for distribution of the fund raised by the tax, (and it is not contended by appellee that it is,) then that section is certainly not violated by the fact that the money may be used in such manner as to cause general property taxes to be lowered in districts where the money is used for school purposes. Section 6 of article 9 applies only to State taxes, (*Raymond* v. *Hartford Fire Ins. Co.* 196 Ill. 329,) and there is no constitutional inhibition against the State's directing the distribution and use of funds appropriated for local purposes, such as schools.

Section 2 of article 8 of the constitution provides: "All lands, moneys, or other property, donated, granted or received for school, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made." It is contended that the provision of section 4 of the act that the county board of any county having a population of 500,000 or less may by a two-thirds vote determine that the moneys apportioned to such county, or any portion thereof, shall be used to provide relief to residents of the county who are destitute and in necessitous circumstances, is in violation of said section of the constitution. To show that that section of the constitution is not violated by the act in question it is only necessary to refer to the case of *Grosse* v. *People,* 218 Ill. 342, in which this court said, and held, that that section applied only to gifts or grants made prior to the adoption of the constitution of 1870 and did not extend to gifts or grants made thereafter.

It is contended that the provision of section 16 of article 5 of the constitution that "bills making appropriations of money out of the treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections, and if the Governor shall not approve any one or more of the items or sections contained in any bill, but shall approve the residue thereof, it shall become a law

as to the residue in like manner as if he had signed it," is violated by the act. It will be noted that the appropriations, other than for the expense of administering the act, are, first, to the Department of Finance for distribution to counties having a population of 500,000 or less in accordance with the provisions of section 4 of the act, and second, to the Illinois Emergency Relief Commission for use in counties having a population of over 500,000 in accordance with the provisions of section 4 of the act. It is necessary, therefore, to refer to section 4 to determine the objects and purposes of the appropriations. By reference to section 4 we find that the money appropriated for distribution to counties having a population of less than 500,000 may be used for either of two purposes, namely, for educational purposes or for relief of destitute persons in necessitous circumstances, or for both of such purposes, and that the money appropriated to the Illinois Emergency Relief Commission may be used, in counties having over 500,000 population, for either or both of such purposes. It is apparent that the legislature has not in either of these appropriations appropriated a distinct and separate amount for each of these two purposes but has appropriated for both or either of the two purposes in one amount. This is in violation of the constitutional requirement that bills making appropriations must specify the objects and purposes for which the appropriations are made and appropriate to such objects and purposes their several amounts in distinct items and sections. The Attorney General in his brief, after referring to the fact that this provision of the constitution was added by amendment for the purpose of enabling the Governor, when passing on appropriation bills, to consider and act on the items of appropriation separately, states that appropriations like the ones made in this act were held valid in *Martens* v. *Brady,* 264 Ill. 178, and *Mitchell* v. *Lowden, supra.* In the the first of these two cases the appropriation under consideration was "for the purpose of building and main-

taining State aid roads in the several counties of the State." It was held that the building and maintenance of roads are so closely connected that it is difficult to say where one ends and the other begins, and that they do not constitute separate and distinct purposes within the meaning of the constitution requiring the itemization of appropriations. There certainly is no such relationship between educating children and relieving the destitute persons in necessitous circumstances as there is between building roads and maintaining roads. The appropriation in *Mitchell* v. *Lowden, supra,* was for construction of a system of hard-surfaced roads provided for in the act in question in that case. It was held that the appropriation was for a single purpose. In this case there is no such single purpose for which the money is appropriated but it is appropriated for use for either one of, or both of, two separate purposes. In *Peabody* v. *Russel,* 302 Ill. 111, the appropriation under consideration was of $500,000 to the Department of Finance for reserve, "to be apportioned between the executive, judicial and military departments of the State government and allotted as emergencies arise by the Director of Finance with the approval in writing of the Governor." It was held that the attempted appropriation was invalid, in that there was no statement of the objects and purposes thereof and the determination of distinct items therefor. In the opinion in that case this court pointed out that before the amendment by which the provision for the itemization of appropriations was inserted in section 16 of article 5 of the constitution, it was contemplated by the constitution that the purpose of appropriations should be stated as shown by section 17 of article 4, which provides that "no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." As was pointed out by this court in *People* v. *Brady,* 277 Ill. 124, the General Assembly must determine to what objects and purposes money of the State

shall be appropriated, and cannot bestow that power upon any person or board for the exercise of discretion as to the objects for which the money shall be expended. By one provision of section 4 of the act the General Assembly attempts to give to the Illinois Emergency Relief Commission the power to determine that moneys allotted to any county having over 500,000 inhabitants, or any portion thereof, are not needed for relief purposes and shall be paid to the county superintendent of schools for use for educational purposes. By another provision of that section the General Assembly attempts to give the county board of any county having less than 500,000 inhabitants the power to determine that moneys apportioned to such county shall not be paid to the county superintendent of schools to be used for educational purposes but shall be paid to the county treasurer to be expended by the county board for relief purposes. These provisions of section 4 are unconstitutional and void, because no money may be drawn from the State treasury except in pursuance of an appropriation made by law and no appropriation may be made subject to the discretion of any person or board or commission as to the purpose or object for which it may be used. Since the appropriations, other than for the expenses of administering the act, are made to be used in accordance with these provisions of section 4 of the act, the attempted appropriations are void and of no effect.

The question remains whether, by reason of the invalid provisions of the act under review, the whole act must fail. If the provisions of an act are so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them." (1 Cooley's

Const. Lim. (8th ed.) pp. 362, 363; *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540; *Springfield Gas Co.* v. *City of Springfield,* 292 Ill. 236; *People* v. *Martin,* 178 id. 611.) The immediate necessity of providing an additional source of revenue to afford some relief from property taxes, especially for schools, and of supplying additional funds for the relief of many persons who, as the result of unemployment, are destitute and dependent, is assigned, in section 17 of the act, as the reason for its passage and making it effective upon its enactment. By section 4 the moneys apportioned to counties having a population of over 500,- 000 shall be used primarily for the relief of residents who are destitute and in necessitous circumstances, and secondarily, when so determined by the Emergency Relief Commission, for educational purposes. In counties of a population of 500,000 or less the moneys are apportioned to the county superintendent of schools for distribution among the common and high school districts of the county, subject to the power of the county board, by the requisite vote of its membership, to divert such moneys, or any part thereof, to the relief of destitute residents of the county. Eliminating the void provisions of sections 4 and 15 and the void exemptions created by section 1, there results an act which imposes a tax upon all persons engaged in the business defined and directs the payment of the proceeds of the tax into the sales tax fund in the State treasury. No person engaged in the business of selling tangible personal property at retail to the consumer for use would be exempt and none of the fund would be apportioned to the several counties of the State. Resolving all doubts in favor of the validity of the act in question, yet, with the eliminations stated, it is not the act the General Assembly passed or intended to pass, and hence the act under review, whole and entire, is void.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE JONES, specially concurring:

I concur in the view expressed in the per curiam opinion that section 4 of the so-called Sales Tax act is unconstitutional and void because it attempts to delegate legislative power to the Illinois Emergency Relief Commission and to county boards in counties having less than 500,000 inhabitants. However, I do not concur in the opinion of the majority of the court that the provisions of the act are insufficient to exempt persons engaged in the business of selling farm products or farm produce when the sales are made by the producer at retail or in the business of selling motor fuel as limited by the act. Section 2 of the act imposes a tax upon persons engaged in the business of selling tangible personal property at retail. Section 1 declares that "tangible personal property" does not mean nor include farm products or farm produce sold by the producer thereof, or motor fuel as defined in the Motor Fuel Tax law. It is claimed that the language of section 1 does not constitute a definition of "tangible personal property." To my mind such a contention is wholly untenable. It seems clear that the language of section 1 was intended to except and exclude farm products and motor fuel, when sold as above mentioned, from the meaning of the term "tangible personal property." It is conceded that the General Assembly, in the enactment of an occupational tax, may include or exclude whatever occupations it pleases. The only limitation upon the power is that the act shall operate uniformly upon all classes of occupations which are either included or excluded. It is not urged, nor can it be urged, that there is lack of uniformity as to the application of the act to those persons in the class engaged in the sale of farm products or farm produce at retail or to those in the class engaged in the business of selling motor fuel. The contention of the majority of the court is that such dealers were first placed in the class against which the tax was imposed and then excluded from it. Such was not the intent of the act.

Quite to the contrary, dealers in farm products and dealers in motor fuel as mentioned in the act were never included within the terms of section 2, which imposes a tax upon persons engaged in the business of selling "tangible personal property." It seems to me the act should be construed to mean that a tax is imposed upon persons engaged in the business of selling "tanglible personal property" as that term is used and defined in section 1 of the act, and that one of the evident and apparent purposes of section 1 is to exclude farm products or farm produce sold by the producer thereof, or motor fuel as defined in the Motor Fuel Tax law, from the provisions of section 2.

For the above reasons, as well as those contained in the dissenting opinion of Mr. Justice Duncan so far as they relate to the exemption of persons engaged in the business of selling farm products and motor fuel, I concur in the opinion of the majority of the court only as to the invalidity of section 4 of the act.

Mr. JUSTICE DUNCAN, dissenting:

An opinion of twenty-six pages was written by me and presented to the court for consideration in vacation on May 9, 1933, which will be herein referred to as the first opinion. Every question presented to the court for decision by the parties to the suit was passed on in that opinion and I voted for its adoption. Five members of this court caused to be prepared an opinion in two parts, containing altogether about seven pages, which might properly be called a per curiam decision on two questions submitted for decision. They arrived at the same conclusion that we did, that the entire act was void by reason of certain provisions that we decided rendered it void, and by reason of two other provisions of the act that we regarded as valid but which they regarded as invalid. They concurred in the remainder of the first opinion, and the opinion written by them and the part of the first opinion concurred in by them were con-

solidated and handed down as the per curiam decision above set forth. About six pages of the first opinion were stricken out of it entirely and no reference to those deleted portions is made in the per curiam decision aforesaid. Those deleted portions of our opinion set forth our discussion of the two provisions which we held to be valid. We still respectfully contend that the first opinion as presented to the conference held correctly on all questions for decision and should have been adopted by the court. We disagreed with the per curiam decision of the court to the effect that the two provisions of section 1 of the act in question were invalid. We concurred in no part of those two holdings of the court and specifically announced that we would file a dissenting opinion as to them. We also strenuously objected to the deletion of that portion of our original opinion which contained our discussion of those two questions and which will be reproduced in this dissent as our principal ground for our contention that the court erred in its holdings aforesaid. The first part of the per curiam opinion caused to be written by the five members of the court begins with the last paragraph on page 13 of the printed copy of the per curiam opinion and ends with the first eleven lines of page 19 thereof, and the second part thereof is the last seven lines of page 26 and all the next and last pages of the opinion, including the last words on that page, "Decree affirmed."

The deleted portion of our opinion which we offer as an answer or dissent to the holdings of the court on said two propositions are the following, copied from our first opinion, to-wit:

Section 1 of article 9 of the constitution provides that "the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn-keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and per-

sons or corporations owning or using franchises and privileges, in such manner, as it shall from time to time direct by general law, uniform as to the class upon which it operates." Section 2 of the same article provides: "The specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed, in such manner as may be consistent with the principles of taxation fixed in this constitution."

As we have pointed out, the tax imposed by this act is a tax on persons engaged in the business of selling tangible personal property at retail and is in the nature of an occupation tax. The enumeration in section 1 of article 9 of certain occupations and businesses that may be taxed does not have the effect of limiting the General Assembly in imposing taxes on occupations or businesses of those there named, because the provision of section 2 of that article expressly forbids a construction that would so limit the power of the General Assembly. *Price* v. *People,* 193 Ill. 114; *Bessette* v. *People,* id. 334; *Bachrach* v. *Nelson,* 349 id. 579.

Under sections 1 and 2 of article 9 the General Assembly has the power to tax persons engaged in the business of selling tangible personal property at retail, and the only limitation on such power is, that it must be by general law uniform as to the class upon which it operates. The tax imposed in this case is by general law. Is the tax uniform as to the class upon which it operates? Appellee contends that it is not, because by definition the term "tangible personal property," as used in the act, does not mean or include farm products or farm produce sold by the producer thereof or motor fuel as defined in the Motor Fuel Tax law. It is to be noted that farm products and farm produce in general are not excluded from the meaning of the term "tangible personal property," but the exclusion of farm products and farm produce is only when such articles are

sold by the producers thereof. It seems clear, therefore, that it was the intention to exclude farmers and persons producing farm products or produce, when selling their own products or produce, from the operation of the act. The effect of such provision is the same as if the act had provided that the producer of farm products and farm produce, when selling such articles produced by himself, should not be considered as engaged in the business of selling tangible personal property at retail. Under the decisions of the courts of this country it is very doubtful if such producer, when selling his own products, would have been considered as engaged in the business of selling tangible personal property at retail had the statute not expressly provided he should not be so regarded. The farmer's business is primarily production, and the sale by him of his products is merely incidental to his business or occupation as producer.

In *Davis* v. *Mayor and Council of Macon,* 64 Ga. 128, 37 Am. Rep. 60, the Supreme Court of Georgia had under consideration the validity of an ordinance which provided: "Each person or firm (farmers selling their own produce excepted) retailing fresh or butcher's meat in the city, whether from stalls, stores or by peddling the same on the streets, shall pay a license of $50." The court held that the tax was an occupation tax, and that the exemption of the farmer selling his own product did not make the ordinance invalid, because "the disposition of meat as the immediate sequel to rearing animals upon a farm is obviously no separate calling from that of farming." The court in that case said: "The ordinance is further attacked as invalid because it has an exception in it exempting from its operation farmers selling their own produce. The exemption would probably have been implied had it not been expressed, for the tax imposed is a business tax—a tax on avocation or calling. The business of a farmer is production—not trade— and the sale directly by himself of what he rears or produces is merely occasional or incidental. * * * The con-

stitutional requirement that 'all taxation shall be uniform upon the same class of subjects' is not infringed by the ordinance in the provision we are considering. The producer whose trade is incident to production, and the middleman whose trade is intermediary between the producer and the consumer, belong not to the same class but to different classes of subjects in a scheme of taxation. At least the difference is wide enough to justify, if not to compel, its recognition in shaping the scheme."

In *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89, 21 Sup. Ct. 43, the Supreme Court of the United States had under consideration a statute of the State of Louisiana imposing a tax on the business of refining sugar and molasses, based on the gross annual receipts of persons and corporations engaged in that business. The statute provided that it should not apply to planters and farmers grinding and refining their own sugar and molasses or to planters who granulate syrup for other planters during the rolling season. It was held that the exemption was valid and that the act did not deny to persons and corporations engaged in a general refining business the equal protection of the laws. The court said: "The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable discrimination in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive or capricious, and made to depend on differences of color, race, nativity, religious opinions, political affiliations, or other considerations having no possible connection with the duties of citizens as tax-payers, such exemption would be pure favoritism and a denial of the equal protection of the laws to the less favored classes. But from time out of mind it has been the policy of this government not only to classify for purposes of taxation but to exempt producers from the taxation of the methods employed by them to put their products upon the market."

The tax imposed by the act we are considering is upon retailers, and the farmer, when selling his produce, is not, strictly speaking, engaging in the business of retailing but is engaged in an incidental part of his business of farming or producing. The exemption, as to him, does not render the act objectionable on the ground that it is not uniform as to the class upon which it operates.

The provision of the act that the term "tangible personal property" does not mean or include motor fuel as defined in the Motor Fuel Tax law, is different from the provision exempting farm products or produce when sold by the producer. Motor fuel generally, by whomsoever sold, is not considered or classed by the act as coming within the meaning of the term "tangible personal property," while, as we have above noted, farm products and farm produce are excluded from the meaning of that term only when such products and produce are sold by the producer. The provision as to motor fuel is, that any person required to make returns and pay a tax under the act need not report the amount collected from sales of motor fuel or pay any tax on such amount. In other words, by whomsoever sold, motor fuel is not considered tangible personal property within the meaning of the act. Is there any reasonable basis for this provision? It is our opinion that there is. By the Motor Fuel Tax law a tax of three cents a gallon on motor fuel is required to be paid by the purchaser thereof for the privilege of operating motor vehicles on the public highways of the State. That tax is paid as an addition to the price of the motor fuel. It is true that that tax is not on the seller of the motor fuel, but it is also true that the exemption in this case is not, as in the case of the farmer, upon the seller but is upon the article sold. It is a matter of common knowledge that while the operator of a gasoline station sells, principally, motor fuel and may be said to be engaged in the business of selling motor fuel, he also sells, ordinarily, lubricating oil, alcohol or other anti-

freezing solutions, tires, inner tubes, tire patches and other automobile accessories. Because he is engaged principally in the business of selling motor fuel he is not exempt from the tax, and must pay a tax measured on the amount of his sales of tangible personal property other than motor fuel. And likewise a country merchant who in connection with his store maintains a tank and pump from which he sells gasoline to motorists is not required to pay a tax on his receipts from such sales but is required to pay a tax measured by the amount of his sales of other articles. The exemption is not upon any persons in the business of selling tangible personal property at retail but upon sales of motor fuel. It operates uniformly as to all persons in the class on which the tax is imposed. We hold that the fact that there is a tax of three cents a gallon (much larger than the tax in this case) already imposed on motor fuel used on the highways for motor fuel makes a sufficient basis for the exemption in this case. The principle involved was recognized and applied by the Supreme Court of the United States in the recent case of *Liggett Co. v. Lee,* 53 Sup. Ct. 481, where it was contended 'that the Florida Chain Store act was invalid because it exempted from the tax thereby imposed "filling stations engaged exclusively in the sale of gasoline and other petroleum products." It was held that the fact that by other laws of Florida all dealers in gasoline were required to pay a license tax and a tax of seven cents a gallon for every gallon of gasoline or other like products of petroleum sold, furnished a sufficient basis for the exemption. The act in this case does not provide that retailers may not take into consideration the tax to be paid under the act in fixing the price of the articles and commodities sold. The General Assembly had the right to take into consideration the generally recognized fact that the burden of a tax imposed on persons in business, measured by their receipts from sales, would ultimately be borne, as a practical matter, by the consumer, and to exclude receipts

from sales of motor fuel from the receipts on which the tax is based because of the tax already imposed on the consumer of motor fuel. It is our opinion that the tax in this case is uniform as to the class on which it operates, is no violation of section 1 of article 9 of the constitution of Illinois or of the provision of the fourteenth amendment of the constitution of the United States that no State shall deny to any person within its jurisdiction the equal protection of the laws.

In view of some of the contentions made in the portion of the per curiam decision prepared by the five members of the court, to which we will later make direct answer, we desire to supplement or add to our original discussion above set forth in this dissent the following observations: "Tangible personal property," within the meaning of the legislature as used in the title of said act and in sections 1 and 2 thereof, means and includes all personal chattels that can be touched or felt, and which has value, within itself, to every person who produces it, buys or sells it to other persons for use and consumption, except "farm products or farm produce sold by the producer thereof or motor fuel as defined in the Motor Fuel Tax law approved March 25, 1929, as amended," as stated in section 1 of the act. It means and includes personal chattels, such as animals, vegetables, fruits, grains, household stuff, money, jewels, clothing, and everything else included under the term "personal chattels" that can be felt or touched and that can be put in motion and be transferred from one place to another and used for the personal comfort of any person, except those stated in section 1 of the act.

Of the twelve or more different shades of meaning given in Webster's New International Dictionary to the word "business," the only possible definitions therein found that could be with any good reason applied to that word as used in the title and in section 2 of the act in question are the following: "2. *a.* Constant employment; regular

occupation. *b*. Any occupation or employment habitually engaged in or followed." The entire act in this case discloses that the tax sought to be imposed under it is a tax on occupations. Therefore the tax in question could not be accurately said to be an employment tax, because it is, in fact, a tax on occupations. The word "business," as used in the first sentence of section 2 of the act, should therefore be considered as meaning any occupation habitually engaged in or followed. We have already stated in this dissent that the tax imposed in the act is in the nature of an occupation tax. What we meant by that expression is that, while the tax is really an occupation tax, the tax imposed in the act is not imposed upon the occupations of retailers selling to the consumers as taxes on occupations are usually imposed, but is imposed upon "persons engaged in the business of selling tangible personal property at retail." If a retail merchant, a butcher, a druggist, a farmer, or one selling groceries at retail, were asked to state the occupation in which he was engaged, no one of them would answer that he was "engaged in the business of selling tangible personal property at retail." His answer would indicate that he was a retail merchant, a butcher, a druggist, a farmer or a retail grocer.

We think it clearly appears from the per curiam opinion, beginning with the last paragraph of page 13 in that opinion, that the five members of the court have arrived at erroneous conclusions and have misinterpreted the legislature as to its declarations in sections 1 and 2 of the act, and that those erroneous conclusions are reached by not adhering to the true meaning of the words "business" and "tangible personal property," as used in sections 1 and 2 of the act. On page 13 of the per curiam opinion the legislature is in substance charged with stating in section 1 of the act that farm products are not tangible personal property. On page 14 thereof that statement is followed by the further declaration that the legislature has no power, by legislative

enactment, to declare that not to be a fact which everyone knows is a fact. It is further stated on page 14 that the purpose of such provision in this act is clearly to exempt from the application thereof those engaged in the business of selling farm products or farm produce. No one of the above conclusions can be reasonably drawn from any of the language of sections 1 and 2 of the act. The provisions of section 1 are very clearly set forth in this language: "For the purposes of this act: Tangible personal property does not mean or include farm products or farm produce sold by the producer thereof or motor fuel as defined in the Motor Fuel Tax law approved March 25, 1929, as amended." How could the legislative intent be more clearly expressed? Those provisions expressed in section 1 furnish the only ground in the whole act for the charge that the legislature declared that farm products are not tangible personal property and the only ground for their next declaration that it has no power, by legislative enactment, "to declare that not to be a fact which everyone knows is a fact." It should have been clearly understood, we think, that the legislature did not make any such declarations, and if the writer of the opinion had fully considered all the language of section 1 we do not see how he could have so erred in his conclusions aforesaid. It is not correct, as stated in the opinion, that persons engaged in a business of selling farm products or farm produce to the consumer at retail are exempt, under the act, from paying the tax in question. Any retail merchant who sells farm products or farm produce to the consumer and who is not the producer of such farm products or farm produce will have to pay the tax provided for in said act. This is true because he is engaged in an occupation in which he sells such farm products or farm produce to the consumer and is not the producer of such articles. Following these erroneous statements and conclusions in the per curiam opinion, sections 1 and 2 of article 9 of our constitution are quoted in

the same words as we quoted them in our original opinion, as above shown in this dissenting opinion. Then follows this statement: "Under this latter section it has been frequently held that the legislature may, by observing the constitutional requirements of uniformity, tax occupations other than those enumerated in section 1," citing a number of decisions of this court, none of which have any tendency to show that the legislature has violated the requirements of uniformity with reference to the exclusion of farm products or farm produce when sold by the producer.

We hold that sections 1 and 2 of article 9 of our constitution within themselves furnish an answer to the contentions of the five members of the court aforesaid that the provisions of section 1 of the act are void. It will be observed on reading sections 1 and 2 of article 9 of the constitution, that under section 1 thereof the legislature is given the power to tax the occupations therein named. The provisions of the constitution in neither section 1 nor 2 are compulsory. The legislature may tax by section 1 any one or more or all of said occupations, or none of them, at its own election. By section 2 of article 9 the legislature may name other occupations that it will tax, or it may decline to name other occupations for taxation, at its own election. This court has no right or power to dictate to it how it shall decide those conclusions. The tax is an occupation tax, as is conceded in the per curiam decision. It is not a tax on the property owned by any of the members of such occupations but is a tax solely on their occupation, and this statement must be kept in mind at all times if we correctly interpret sections 1 and 2 of article 9 of the constitution. It is conceded by the five members of the court that the General Assembly may exempt the members of any occupation from taxation under article 9 of the constitution, if there is any reasonable ground upon which they may be exempted. This concession, as we believe, is fatal to their contention that there is no reason-

able basis in this case upon which it can be held that farmers selling farm products or farm produce produced by them may be excluded from taxation upon their occupation of farming. We have already cited authorities, including the Supreme Court of the United States, that directly hold that any farmer or planter who as his sole occupation produces farm products or farm produce on his farm or plantation and sells the same at retail to the consumer may be exempted from paying an occupation tax under a law which requires other persons engaged in an occupation in which they sell any tangible personal property at retail, to pay an occupation tax, without violating the rule of uniformity as to the class upon which it operates. The reason for exempting the farmer or planter from paying such tax is, that he is merely selling such produce and products as an incident of his business. Such exemptions are made to encourage production. If a farmer really has two occupations—farming and conducting a retail store in the country, in which store he sells many articles of tangible personal property at retail which are not produced on his farm—he may be exempted from an occupation tax on his farm products and farm produce and taxed on the other articles that he sells as a country merchant that are not produced on his farm. We think it is clear that the five members of the court have committed error in their decision because they have persisted in insisting that a farmer whose sole occupation is to produce and sell at retail his farm products and farm produce to consumers has two distinct occupations, while, as a matter of fact, his selling at retail to consumers is a mere incident of his occupation of farming. They indicate in their decision that such a farmer has really three occupations if he sells to consumers at retail and also sells a large part of his farm products to a dealer therein who re-sells his products on the market for a profit. In this contention their decision conflicts with those of the Supreme Court of the United States and many other courts in this country.

A person is a peddler only if he adopts peddling as his principal occupation or vocation or as one of his principal occupations or vocations—that is, only if he goes into peddling, which has been called a trade, as a regular and customary business or occupation. (*Welton v. Missouri*, 91 U. S. 275, 23 L. ed. 347.) It seems to be well settled that farmers selling the products of their farms are not peddlers, and whether a person making itinerant sales of meat is a peddler would seem to depend on whether he raised and slaughtered the meat himself. (*In re Snyder*, 10 Ida. 682, 79 Pac. 819; *Commonwealth v. Gardner*, 133 Pa. St. 284, 19 Atl. 550.) Hawkers and peddlers are persons who practice carrying merchandise about from place to place for sale. In this country and Canada the words "hawker" and "peddler" are considered equivalent in law, the term "peddler" being more used at the present day. (15 Am. & Eng. Ency. of Law, (2d ed.) sec. 1, p. 291, citing cases.) A farmer or gardener, although he may vend his commodities at retail from door to door and from town to town, is not regarded as a hawker or peddler so long as he confines his sales to the growth or production of his own farm or garden. The sale of farm or garden produce in such case is considered merely an incident in the principal business of farming or gardening. (Ibid. p. 294, citing *Homewood v. Wilmington*, 5 Houst. (Del.) 123, *Burr v. Atlanta*, 64 Ga. 228, *Davis v. Macon*, 64 id. 132, *Roy v. Schuff*, 51 La. Ann. 86, *People v. Sawyer*, 106 Mich. 439, *Commonwealth v. Gardner*, supra, and *Lansford v. Wertman*, 18 Pa. Co. Ct. 469.) We respectfully submit that under the specific holdings of the Supreme Court of the United States and the other authorities in this country which we have cited, the provisions in this act that farm products or farm produce sold by the producer thereof do not violate said provisions of sections 1 and 2 of article 9 of the constitution for the reasons that we have above set forth.

For the reasons that we have above stated we also contend that the provisions of section 1 of the act with respect to motor fuel as defined in the Motor Fuel Tax law do not in any way violate the provisions of sections 1 and 2 of article 9 of our constitution. We again call attention to the fact that the purpose of section 1 of the act, in part, is to definitely state that farm products or farm produce sold by the producer, and motor fuel as defined in the Motor Fuel Tax law aforesaid, are not to be considered as tangible personal property for the purposes for which the act was enacted by the legislature. In other words, that section purports only to indicate that farmers and gardeners when selling their products at retail to consumers are to be exempted from taxation under the act on their occupations of farming and gardening, and that all persons in the State, without exception, who sell motor fuel as defined in the Motor Fuel Tax law are exempt from taxation, under the act, on their sales of such motor fuel. In section 1 of the Motor Fuel Tax law it is declared: "For the purposes of this act: 'Motor fuel' means all volatile and inflammable liquids produced or compounded for the purpose of, or which are suitable and practicable for operating motor vehicles. It does not, however, include kerosene oil; unless such kerosene oil has been mixed, compounded or blended with other volatile and inflammable liquids for use in motor vehicles." Section 2 of that act provides that a tax is imposed on the privilege of operating motor vehicles upon the public highways of this State after July 31, 1929, at the rate of three cents per gallon for all motor fuel used in such motor vehicles upon such public highways. (Cahill's Stat. 1931, p. 1939.) "Public highways" mean or include roads improved with concrete, brick, asphalt, macadam and gravel, as declared in the Motor Vehicle act.

The tax imposed on the privilege of operating motor vehicles upon the public highway is to be used for the maintenance of the improved highways, or payment of bonded

indebtedness incurred for such improvement, or for similar purposes, as provided in the Motor Fuel Tax law aforesaid. It is very apparent from the provisions of the act in question that all persons engaged in any occupation of selling tangible personal property at retail to the consumer were exempted from paying any tax on motor fuel, including gasoline, sold by them, because the practical effect of doubly taxing or burdening persons paying the privilege tax aforesaid could not well be otherwise avoided. This is so because of the fact that any person selling gasoline or motor fuel under the provisions of the act in question would have a right to add, and undoubtedly would add, the additional cost to him for motor fuel under said act. This bare fact constitutes a sufficient basis for exempting any person who sells such motor fuel from paying the sales tax on it aforesaid. The legislature had already placed all the burden of taxation upon the privileged class who operate motor vehicles upon the public highways that it deemed proper or necessary for the purposes for which that privileged tax was assessed. The five members of the court aforesaid answered this argument by saying that the privilege tax is against the consumer of gasoline who uses it for traveling on the highways of the State in motor vehicles. What difference does that make in arriving at the conclusion that that does or does not constitute a sufficient basis for refusing to collect the tax under the act in question for such motor fuel sold? The legislature has an equal right to protect the privileged class as well as the party who is engaged in selling such motor fuel. Such protection under this statute does not and can not have the effect to cause any discrimination between parties engaged in selling such motor fuel, and it cannot and does not have the effect to violate the uniformity clause as to taxation in article 9 of the constitution. This is so whether the person engaged in the business of selling motor fuel is engaged solely in that business or whether he sells not only motor fuel but a number of other articles such as

we have above enumerated that sellers of motor fuel often sell. One of the confusing things that the writers of the per curiam opinion persist in stating is, that a party who sells motor fuel is engaged in as many businesses or occupations as he sells articles of tangible personal property to the consumer at retail. All persons who engage in a business or occupation of selling tangible personal property at retail to the consumer are engaged in one occupation or business although they may sell a hundred articles or more of such tangible personal property. In other words, he is simply a retail merchant of some character who sells groceries or dry goods or both of such articles.

What does the word "uniformity" mean as it is used in article 9 of our constitution? That article considers, in the first place, taxation of property of all kinds, real and mixed property and both tangible and intangible personal property. Would anyone insist that the requirement of uniformity in taxing real and mixed property and tangible and intangible personal property is violated if every person is taxed at the same rate on every character of property that is taxed? We again ask, would the rule of uniformity be violated in taxing occupations if all persons in the State are taxed at the same rate on their occupations? Taxes on occupations are what we are considering in this case, and we undertake to say, without fear of successful contradiction, that there is not a single occupation in this State that is not taxed under the act in question at the same rate as every other occupation. That is true whether the individual is engaged in selling one item, only, of tangible personal property to the consumer or a hundred articles of tangible personal property to the consumer. The per curiam opinion again says: "Not all gas consumed is taxed, as the consumer may secure return of the tax paid by him on motor fuel not used on the highways. Unless the purchaser of gasoline chooses to use it on the highways he pays no tax on it." Those statements are true, but they have absolutely

no tendency to show that the rule of uniformity of taxation mentioned in article 9 of the constitution is violated, for the simple reason that no person in Illinois who sells motor fuel, including gasoline, is required to pay a tax on it, no matter how the consumer may use it. The provision of the constitution as to taxes on occupations is, that the General Assembly shall have power to tax occupations as it shall from time to time direct by general law, "uniform as to the class upon which it operates." If every occupation is taxed at the same rate of taxation as it is under the act in question, how can it be said that the tax is not uniform as to the class upon which it operates? How could it be said that any person whose occupation is taxed could be said to be discriminated against if his occupation is taxed at the same rate as every other occupation? These questions do not require any further answers by us, and no further argument is required, or even the citation of authorities, to show that the provisions of the act in question do not violate article 9 of the constitution in any way whatever.

The provision in the last part of section 1 of article 9 of the constitution that the tax on occupations, and the other taxes on subjects other than property taxes, shall be uniform as to the class upon which it operates, clearly means that such taxes shall be uniform as to the class of persons which it affects or upon which it operates. There is no such provision contemplated in that article that the requirement of uniformity is violated if a statute levying such taxes expressly exempts all persons selling an article of tangible personal property from such taxation. The suggestion of the five members of the court that the provision of the Federal government that the purchasers of tobacco who pay a government tax furnishes as good a basis for excluding the sellers of tobacco from the tax under this act is not tenable. The Federal tax aforesaid is nothing like as large as the tax levied under the act in question. But the main reason why such contention is not tenable is that this State

has never given up its right, in any case, to levy a tax that is permissible in our constitution because the Federal government has also imposed a similar tax. The Inheritance Tax law of this State is a familiar example showing that our assertion is true. The fact that the Federal government levies a tax on incomes or upon any other subject of taxation would not at all be considered as any reason why the legislature of this State should not levy the same character of taxes. The reason for the exemptions that we have sustained in this case is based on the sole ground that the State does not want to doubly burden those paying the privilege tax aforesaid by levying a tax on persons selling motor fuel as defined in the Motor Fuel Tax law.

The per curiam opinion also omits the following paragraph of our original opinion:

"There is no violation of section 3 of article 9 of the State constitution by the act. That section relates to the exemption of property from taxation. The tax imposed by this act is not, as we have shown, a property tax. The provision of the act that the term 'tangible personal property' shall not mean or include farm products and farm produce sold by the producer thereof, or motor fuel as defined in the Motor Fuel Tax law, does not exempt any property from taxation. That is true because no property is taxed by the act but the tax is upon persons engaged in the business of selling tangible personal property at retail, measured by the amount of their sales."

The per curiam opinion has not considered the propositions that we passed on in the above paragraph and no reason is given for excluding it. Our only reason for here reproducing our holding on that question is to show that in the original opinion we passed on every question raised. We do not deem it necessary to reply to the concluding part of the per curiam opinion written by another one of the five members of the court, because there is no holding in it that

differs, in substance, in any way from the concluding part of our opinion.

For all the reasons heretofore given by us we respectfully dissent from that part of the per curiam opinion that holds that section 1 of the .act violates the provisions of article 9 of the constitution.