(Nos. 22738, 22739, 22740.—

THE PEOPLES GAS LIGHT AND COKE COMPANY, Appellant, *vs.* KNOWLTON L. AMES, JR., Director of Finance, Appellee.—THE COMMONWEALTH EDISON COMPANY, Appellant, *vs.* KNOWLTON L. AMES, JR., Director of Finance, Appellee.—THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant, *vs.* KNOWLTON L. AMES, JR., Director of Finance, Appellee.

*Opinion filed December 20, 1934—Rehearing denied Feb. 12, 1935.*

Cooke, Sullivan & Ricks, Isham, Lincoln & Beale, A. D. Stevens, and Ralph D. Stevenson, (George A. Cooke, Edward H. Fiedler, Harry J. Dunbaugh, and Edward M. Bullard, of counsel,) for appellants.

Otto Kerner, Attorney General, (James G. Skinner, and Montgomery S. Winning, of counsel,) for appellee.

E. Bentley Hamilton, *amicus curiæ.*

Mr. Justice Farthing delivered the opinion of the court:

The Peoples Gas Light and Coke Company, the Commonwealth Edison Company and the Central Illinois Public Service Company have each appealed from the decrees of the circuit court of Cook county dismissing for want of equity their amended and supplemental bills of complaint. The causes, which were brought directly to this court because they relate to the revenue, have been consolidated here. Appellants sought to restrain Joseph J. Rice, Director of Finance of this State, who has been succeeded

in office by appellee, Knowlton L. Ames, Jr., from enforcing against them the provisions of an act entitled, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption," approved June 28, 1933, effective July 1, 1933. (Laws of 1933, p. 924.) Appellee's demurrer to the amended and supplemental bill of the gas company was sustained and the bill was dismissed. After appellee's demurrers were overruled in the other two cases he filed answers, and after the hearings the bills were dismissed for want of equity.

We need not detail the allegations of the pleadings. Appellants are public utility companies doing business under "An act concerning public utilities," approved June 29, 1921, in force July 1, 1921, as amended. (Cahill's Stat. 1933, p. 2185 *et seq.*; Smith's Stat. 1933, p. *2227 et seq.*) The Peoples Gas Light and Coke Company is engaged in supplying gas to its customers in the city of Chicago. The Commonwealth Edison Company is similarly engaged in furnishing electricity in that city, and the Central Illinois Public Service Company furnishes electricity to the public in four hundred sixty-seven communities, gas in twenty communities and water in nine communities in this State.

The sole question presented by this consolidated cause is whether appellants are liable to pay the tax imposed by the Retailers' Occupation Tax act. Appellants contend that the very nature of the business of public service companies, the circumstances preceding and attending the passage of the act and the language used in the act demonstrate that it was not intended to apply to them. They also contend that they are not engaged in the business of "selling," and, in any event, they insist that public service companies in furnishing gas or electric service are not engaged in the business of selling "tangible" personal property.

We shall consider first the contention that the act was not intended to apply to public service companies. It is

fundamental that taxing laws must be strictly construed. They are not to be extended by implication beyond the clear import of the language used. In case of doubt they are construed most strongly against the government and in favor of the tax-payer. (*Majestic Utilities Corp.* v. *Stratton,* 353 Ill. 86, 94; *People* v. *Sears,* 344 id. 189, 193.) "Strict construction" does not require that words be given the narrowest meaning of which they are susceptible, and words of the act are to be given their full meaning. The proper office of the rule is to help solve ambiguities—not to compel an immediate surrender to them. *Biffer* v. *City of Chicago,* 278 Ill. 562.

Section 2 of the Retailers' Occupation Tax act, in so far as it is material here, provides: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State," etc. Section 1 defines a "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for re-sale in any form as tangible personal property, for a valuable consideration. Transactions whereby the possession of the property is transferred but the seller retains the title as security for payment of the selling price shall be deemed to be sales."

Appellants contend that persons engaged in the business of selling at retail constitute a distinct class well understood by the business world and by people in general. This class, they contend, includes only merchants, jobbers, retail traders and persons engaged generally in the business of selling goods and merchandise as those terms are thought of in the competitive field of trade and commerce. They say their occupation constitutes a peculiar class of business enterprise entirely distinct and separate from the business of the retailer or retail merchant. This contention is persuasive. Since its beginning the business carried on by public service companies or public utilities has had char-

acteristics peculiar to it. From early times the business of public utilities was deemed to be such as to require the imposition upon it of certain obligations not imposed by law upon other occupations. The term "public utility" implies a public use carrying with it the duty to serve the public and treat all persons alike, and it precludes the idea of "service" which is private in its nature and is not to be obtained by the public. (*Springfield Gas Co.* v. *City of Springfield,* 292 Ill. 236; *Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 id. 183.) This distinction was recognized in *People* v. *Wyanet Light Co.* 306 Ill. 377, where we held that a company incorporated "to own and operate an electric light, heating and power plant for profit" was not organized for purely manufacturing and mercantile purposes within the meaning of paragraph 4 of section 3 of the Revenue act, and that the capital stock of the company was therefore subject to assessment by the State Tax Commission rather than by the local assessor. We said on page 381: "Appellee belongs to the class of corporations ordinarily known and referred to as public utilities. Such corporations form a particular class by themselves and are regulated by special provisions of our statute known as the Public Utilities act. Merchandise is defined in general as 'any movable object of trade or traffic; that which is passed from hand to hand by purchase or sale—specifically the object of commerce; a commercial commodity or commercial commodities in general; the staple of a mercantile business; commodities, goods or wares bought and sold for gain.' (Century Dict.) Corporations for purely mercantile purposes are well understood by the people in general. They form quite a large class of corporations and are very different in character from corporations known as public utilities."

The case of *Public Utilities Com.* v. *Springfield Gas Co.* 291 Ill. 209, recognizes the same distinction. We there said on page 217: "The property of the public utility is de-

voted to the public use. There is always the obligation springing from the nature of the business in which it is engaged—which private exigency may not be permitted to ignore—that there shall not be an exorbitant charge for the service rendered. But the State has not seen fit to undertake the service itself, and the private property embarked in it is not placed at the mercy of legislative caprice. It rests secure under the constitutional protection, which extends not merely to the title but to the right to receive just compensation for the service given to the public. (*Simpson* v. *Shepard,* 230 U. S. 352.) No direct parallel can be drawn between a private corporation and a public service corporation, for the reason that to a greater or lesser extent the public has acquired an interest in the use of the property devoted to public use, and correlatively the company owes a duty to the public as well as to its stockholders and must charge no more than a reasonable rate for service rendered."

The language just quoted is significant for the reason, also, that it regards public ultilities as rendering service. That the words used were aptly chosen is obvious from a consideration of the Public Utilities act, wherein it is shown that the legislature regards public utilities as engaged in rendering service rather than in selling. Section 10 of that act defines "service" as follows: "The term 'service,' when used in this act, is used in its broadest and most inclusive sense, and includes not only the use or accommodation afforded consumers or patrons, but also any product or commodity furnished by any public utility and the plant, equipment, apparatus, appliances, property and facilities employed by, or in connection with, any public utility in performing any service or in furnishing any product or commodity and devoted to the purposes in which such public utility is engaged and to the use and accommodation of the public." The furnishing of any commodity is thus described by the legislature as "service." Section 3 of the

same act provides that commissioners may be appointed with power to make valuations and "to estimate proper rates of service of public utilities." Section 8 empowers the commission to examine utilities "with respect to the adequacy, security and accommodation afforded by their service." Section 32 provides: "Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable."

The same session of the legislature which passed the Retailers' Occupation Tax act also amended the Public Utilities act, and again referred to that business as a "service" when in section 27a (paragraph 2b) it said: "The dividend proposed to be paid upon such common stock can reasonably be declared and paid without impairment of the ability of the utility to perform its duty to render reasonable and adequate service at reasonable rates." Laws of 1933, p. 845.

These expressions of the legislature which speak of the utility business as one of rendering service indicate the Retailers' Occupation Tax act was not intended to include the public utility business, because the act plainly refers to those engaged in the business of selling tangible personal property for use or consumption. It is true, as appellee points out, that the business of public utilities has been referred to by this and other courts as that of "selling," but in none of the cases cited was the exact nature of the transactions a subject matter for determination. Such expressions cannot prevail over the express declarations by the legislature in the Public Utilities act.

Appellants also rely upon the rejection of certain amendments which were proposed when the legislature passed both the first and second Retailers' Occupation Tax acts. A proposal to amend the title of the first act to specifically

include all personal property and to extend the act to those rendering service was defeated. Two other amendments introduced at the same time, which expressly included public utilities along with other occupations, were abandoned because of the failure of the amendment to the title. After the first act was declared unconstitutional in *Winter* v. *Barrett*, 352 Ill. 441, the present act was passed by the legislature. An attempt was made to amend the present act so as to include public utilities, and more than one hundred other service-rendering occupations by name, and reducing the tax on persons engaged in the business of selling tangible personal property from two per cent to one per cent. This amendment was defeated by one vote.

It has been frequently decided that the probative value of the rejection of an amendment will be considered by the courts in construing an act if the language is at all doubtful. (*Lapina* v. *Williams*, 232 U. S. 78, 89; *Pennsylvania Railroad Co.* v. *International Coal Co.* 230 id. 184, 198.) In *McDonald & Johnson* v. *Southern Express Co.* 134 Fed. 282, the question was as to the construction of a statute, and the court said: "It was suggested by the learned Attorney General at the hearing that the act be so construed as to confine its operation to shad caught within the limits of the State. Such interpretation would limit the words of the act and be manifestly against the intent of the legislature which enacted it, for it appears from the agreed statement of facts that an amendment was proposed while the act was on its passage, striking out the words 'any shad fish,' in section 1, and inserting in lieu thereof the words, 'any shad fish caught in the waters of the State of South Carolina,' but the said amendment was rejected, and the court cannot now do by construction what the legislature refused to do by enactment." This conclusion was also reached in *Rea* v. *Cook*, 217 Mass. 427, and *Ex parte Oppenstein*, 289 Mo. 421. In *State* v. *Lancashire Fire Ins. Co.* 51 S. W. (Ark.) 633, it is stated that little weight

should be given to rejected amendments in determining the intent of the legislature. The debates of Congress have no great persuasive force in determining the intention of that body, (*United States* v. *Trans-Missouri Freight Ass'n,* 166 U. S. 290,) but the sound rule to be deduced from the authorities is that the rejection of an amendment should be considered and given weight in determining the legislative intent.

Appellee contends that the amendment to the present act may have been rejected because the members of the .legislature believed public service companies were already covered by the act or because the legislature did not want to reduce the tax from two per cent. The amendment would have reduced the tax on persons already covered by the act and would have imposed a like tax upon the additional occupations named. The issue thus presented to the legislature was whether it would pass the act as it then was or whether it should reduce the rate and increase the class of persons subject to the tax. The fact that the amendment was rejected tends to show that the legislature did not want to tax persons engaged in occupations of rendering service, as distinguished from those selling tangible personal property for use, etc. The fact that public utilities were mentioned in the amendment among the occupations proposed to be taxed also indicates that the legislature considered that public utilities are engaged in rendering service as distinguished from being engaged in the business of selling.

In support of their contention that they were not intended to be included within the act, appellants rely upon language used by this court in *Winter* v. *Barrett,* 352 Ill. 441, which held unconstitutional the first Retailers' Occupation Tax act. That decision was handed down shortly before the present act was passed, and in it we used language that would indicate that the act was meant to apply to persons who were free to pass on the tax to the con-

sumer, and that competition between retailers could be relied upon to prevent prices of articles and commodities sold being raised in price more than is necessary actually to protect business men in their attempt to make a fair profit. Public utilities are not free to pass on the tax to the consumer. Their rates are fixed by the Commerce Commission. They would have to apply for an increase in rates or possibly suffer confiscation of their property by the imposition of the tax. They do not operate in a competitive field. With these considerations in mind, if the legislature intended to include such occupations in the act it would have used language to remove the doubt raised by what we said in the *Winter case.*

Another circumstance relied upon by appellants is an opinion of the Attorney General of the State of Pennsylvania construing an act after which they say our act is patterned. The opinion of an Attorney General of another State is a circumstance that is entitled to little weight in arriving at the intention of our legislature. It has no binding force in the jurisdiction where it was rendered, and it is not shown that our legislature knew of its existence.

From a consideration of the circumstances surrounding the enactment of the law, and from the language of the act itself, we are of the opinion that public utilities are not within the scope of the act.

What we have said disposes of this appeal, and there is no need of discussing the further reasons advanced by appellants for holding them without the Retailers' Occupation Tax act, viz., that they are not engaged in the business of making sales, or, at any rate, that they are not selling tangible personal property.

The decrees of the circuit court of Cook county are reversed and the causes are remanded to that court, with directions to enter decrees in accordance with the views herein expressed.

*Reversed and remanded, with directions.*