(No. 23024.

The Chicago District Pipeline Company, Appellee, *vs.* The Illinois Commerce Commission, Appellant.

*Opinion filed June 14, 1935—Rehearing denied October 9, 1935.*

Stone, C.J., and Farthing, J., specially concurring.

Otto Kerner, Attorney General, (Irvin, Rooks, Robert H. Farrell, and Eugene L. Cohn, of counsel,) for appellant.

Cooke, Sullivan & Ricks, and Wilson & McIlvaine, (George A. Cooke, F. L. Daily, J. T. Mullaney, and J. E. Alschuler, of counsel,) for appellee.

Mr. Justice Orr delivered the opinion of the court:

A certificate of public convenience and necessity was granted in 1933 by the Illinois Commerce Commission, appellant, to the Chicago District Pipeline Company, appellee. The order of the commission permitted appellee to maintain and operate two gas pipelines owned by it upon condition that it would convey, deliver and sell gas at wholesale to corporations, both municipal and private, engaged in the sale and delivery of gas to the public. From this order appellee perfected its appeal to the superior court of Cook county, which upon consideration vacated and set aside the order of the commission. By this direct appeal the judgment of the superior court is assailed as erroneous.

The chief controversy hinges about the restrictive condition imposed upon appellee in the commission's order. Appellee's petition only asked for leave to sell gas at wholesale to privately owned public utility companies located along its pipelines in LaSalle, Grundy, Kendall and Will counties. By an amendment appellee also asked for consent and approval of a contract with the Public Service Company of Northern Illinois for the purchase of the latter's 20-inch pipeline extending from a point in Cicero to the city limits of Chicago. These were the issues presented to the commission which it took for determination upon exhibits and testimony produced at the hearing. No issue was raised and no evidence was heard as to any proposed sale of gas to any municipal corporation.

Two weeks after the cause had been submitted to the commission and marked "heard and taken," the village of Hinsdale presented its petition asking leave to intervene in the cause. The petition recited, among other things, that it was a municipal corporation authorized by the laws of this State to acquire, own and operate a distribution system for the supply of gas to its inhabitants; that it was situated within relatively close proximity to one of appellee's pipelines, and that in case such village acquired a gas-distribution system, its situation would make feasible a connection with appellee's pipeline, through which a supply of gas might be obtained. The petition urged that no certificate of convenience and necessity be granted to appellee until its supply of gas was made available for purchase at wholesale, not only by public utility companies but also by any municipality which might qualify itself to own and operate a gas-distribution system. The prayer of the petition for leave to intervene was granted, together with leave to argue the case orally and file written briefs.

The superior court did not err in holding that the village of Hinsdale was improperly permitted to intervene and become a party to the proceeding before the commis-

sion. The disputed clause in the commission's order undoubtedly arose from such intervention, as no issue of the right of municipalities to buy gas for public distribution had previously been raised. The village of Hinsdale was not a party to the proceeding and appeared only as a possible future owner of a gas-distribution system. It offered no evidence of any kind. Nothing in the record shows that it now owns, in the past has ever owned or has any plan or prospect of owning in the future a municipal gas system. Its petition to intervene stated its interest to be "in case it acquires a gas-distribution system." This recital gave it no present right to complain or intervene. (*Public Utilities Com.* v. *Marseilles Land Co.* 295 Ill. 522.) Its statutory right to acquire a gas-distribution system at some future time, if its inhabitants then desire it, was insufficient to confer upon it any interest in the pending proceeding. Whatever interest it possessed was altogether remote, expectant and contingent. Under these circumstances the Commerce Commission exceeded its powers in entering an order not based upon any petition of the parties properly before it and wholly unsupported by any evidence heard or taken. *Alton and Southern Railroad* v. *Commerce Com.* 316 Ill. 625; *Public Utilities Com.* v. *City of Dixon*, 292 id. 521; *Washington* v. *Fairchild*, 224 U. S. 510.

The order entered by the commission was predicated upon the assumption that appellee, as a public utility, could not limit the scope of its public engagement to the sale of gas to other privately owned public utility companies, and thus, in effect, discriminate against municipal corporations. On this point it reasoned that once a public utility dedicates its property to a public use it thereafter becomes affected with a public interest and thus "subject to comprehensive regulation by the State." The principle of State regulation of all public utilities is well enough established, but in Illinois its application has never been extended to permit such unlimited or so-called "comprehensive" regulation as

was attempted in this case. We have held privately owned business is clothed with a public use only to the extent that it may be formed to deal with a particular class of patrons, (*People* v. *Ricketts,* 248 Ill. 428,) or to the extent of the interest created, (*Austin Bros. Transfer Co.* v. *Bloom,* 316 Ill. 435,) or held out for that purpose. (*Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528.) In the case at bar appellee's public engagement extended only to the supply of gas at wholesale to all public utilities located along its pipelines. The legislature has not yet given the Commerce Commission any regulatory powers or jurisdiction over municipally owned and operated utilities. In fact, municipally owned and operated utilities are expressly excluded from the statutory definition of public utilities in this State; (Cahill's Stat. 1933, chap. 111a, par. 25; Smith's Stat. 1933, chap. 111⅔, par. 10;) and this definition, though attacked as arbitrary and unreasonable, was upheld in *Springfield Gas Co.* v. *City of Springfield,* 292 Ill. 236, and sustained in 257 U. S. 66. No unlawful or unreasonable discrimination could therefore result in appellee's failure or refusal to extend its service beyond the scope of its publicly professed obligation. Nor can any legal sanction be found to authorize the commission's attempt to withhold a certificate of convenience and necessity from appellee until it agreed, as a condition subsequent, to sell gas to municipalities. Orders of this character, dependent upon submission to a collateral condition beyond the statutory and constitutional power of the commission to impose, have been repeatedly condemned. (*United States* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 282 U. S. 311; *People* v. *Public Service Com.* 262 N. Y. 39, 186 N. E. 195; *People* v. *Public Service Com.* 227 id. 248, 125 N. E. 438.) On this point appellant's citations of contrary authority are beside the point, as they involve cases where the utility has voluntarily undertaken to render service in the community or area involved.

What we have said above largely disposes of the material legal issues involved in this appeal. The other points raised are similar, inter-related and to a certain degree moot in character. Thus, as argued by appellant, "it is proper and lawful for the commission to require that a public utility rendering wholesale service shall sell gas, upon reasonable application, to municipal as well as private corporations owning and operating gas-distribution systems." If the facts before us presented such an issue an inquiry would then be pertinent. As said before, no evidence was offered that public convenience and necessity would be served by the sale of gas to any municipal corporation for re-sale. Nor was there any finding of fact on this point—a natural result when no evidence was produced upon which such finding could be based. Section 65 of the Public Utilities act (Cahill's Stat. 1933, chap. 111a, par. 84; Smith's Stat. 1933, chap. 111⅔, par. 69;) in part provides: "At the conclusion of such hearing the commission shall make and render findings concerning the subject matter and facts inquired into and enter its order based thereon." This requirement is mandatory and cannot be disregarded. (*Kewanee and Galva Railway Co.* v. *Commerce Com.* 340 Ill. 266; *Chicago Railways Co.* v. *Commerce Com.* 336 id. 51; *Northern Illinois Traction Co.* v. *Commerce Com.* 302 id. 11.) Without such specific findings in the record the order is void. *Chicago Railways Co.* v. *Commerce Com. supra; Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 341 Ill. 277; *Business Men's Ass'n* v. *Commerce Com.* 337 id. 149.

The judgment is affirmed.

*Judgment affirmed.*

STONE, C.J., and FARTHING, J., specially concurring:

We concur in the judgment in this case and in the opinion in so far as it holds that, under the facts here presented, the village of Hinsdale had no right to intervene in the

proceedings before the commission. Whether the village of Hinsdale, had it been properly equipped to take gas from the appellee, could require such service of it is not a question calling for a decision here, since the village had no right in this case to intervene. We cannot concur in the view, however, that the appellee pipeline company has a right to choose that it will sell gas to privately owned utilities only. It is true that a public utility is not required to furnish service other than that which it is empowered by its charter to furnish. It is apparent from the petition filed with the commission in this case by the pipeline company that it is authorized to furnish gas service to municipally owned distribution plants as well as to such plants privately owned. In its petition it states that it is a corporation organized under the laws of this State, and is "authorized by its charter to acquire by purchase, production or otherwise, gas, whether natural, manufactured or mixed, and to hold, transmit, sell and dispose of the same, and for such purposes to construct, own and operate pipelines and other suitable facilities." Clearly, this authorization is broad enough to cover service to municipally owned distribution plants as well as those privately owned.

We cannot agree with the holding in the majority opinion that because the Illinois Commerce Commission does not have jurisdiction over municipally owned distribution plants the pipeline company may not be said to be discriminating against a municipality by refusing to furnish gas to a municipality equipped with a distribution plant. It is because of future effect of the majority opinion on that point that our views are here presented. It is true, as decided by this and other courts, a utility cannot be compelled to extend its service beyond the limits of the territory it is undertaking to serve, but it is likewise true that when a public utility undertakes to offer a class of public service, it has no right to choose, within the territory to be served by it, the patrons whom it will serve.

Section 38 of the Public Utilities act provides: "No public utility shall, as to * * * services, facilities or in other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. * * * Every public utility shall, upon reasonable notice, furnish to all persons who may apply therefor and be reasonably entitled thereto, suitable facilities and service, without discrimination and without delay."

The principle is well sustained by this court and others, that persons, either natural or corporate, who are engaged in conducting a business which is public in character or impressed with a public interest, cannot arbitrarily select their patrons. The term "public utility" implies a public use of an article, product or service, and by our statute there is imposed on the producer, or one proposing to furnish such article or service, a duty to serve the public and treat all persons alike, without discrimination. (*Peoples Gas Light Co.* v. *Ames*, 359 Ill. 152; *Springfield Gas Co.* v. *City of Springfield*, 292 id. 236; *Public Utilities Com.* v. *Bethany Telephone Co.* 270 id. 183; *Consumers' Co.* v. *Hatch*, 224 U. S. 148, 56 L. ed. 703; *New York and Queens Gas Co.* v. *McCall*, 245 id. 345, 62 L. ed. 337; *United Fuel Gas Co.* v. *Railroad Com.* 278 id. 300, 73 L. ed. 390.) It follows they may not deny that service to a municipality properly equipped with a distribution plant merely because such plant is municipally owned.

The commission may not impose upon a public utility such as appellee, as a condition to the granting of a certificate of public convenience and necessity, the requirement that it also furnish service to a municipality where the latter is not then entitled to that service, (*United States* v. *Chicago, etc. Railroad Co.* 282 U. S. 311,) but it does not follow that a municipality, when properly equipped, may not on its own demand require and receive such service. In this case appellee's petition to the commission seeks per-

mission to sell gas at wholesale to certain privately owned public utilities and to make certain extensions of its lines. From the facts of this case as hereinbefore stated, it appears that the village of Hinsdale was not entitled to such service, and so did not have a right to intervene in the proceeding before the commission. As to the right of a municipality to apply for and receive gas for distribution purposes from a public utility such as appellee when the village is prepared so to do, we are convinced that the majority opinion is wrong.