(No. 24282.—

THE HERLIHY MID-CONTINENT COMPANY *et al.* Appellants, *vs.* S. L. NUDELMAN, Director of Finance, Appellee.

*Opinion filed December 22, 1937—Rehearing denied Feb. 2, 1938.*

FARTHING, C. J., dissenting.

T. A. SHEEHAN, WILLIAM A. BITHER, and LITSINGER, HEALY, REID & BYE, for appellants.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, MARTIN PHILIPSBORN, and WILLIAM C. CLAUSEN, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The Herlihy Mid-Continent Company and the Underground Construction Company filed a complaint in the circuit court of Cook county against the Director of Finance and the Treasurer of the State of Illinois to enjoin the collection of the Illinois Retailers' Occupation tax and to recover certain taxes theretofore paid by complainants. The S. A. Healy Company and four other contractors were permitted to intervene as parties plaintiff and, by agreement, the complaint was dismissed as to the Treasurer of the State of Illinois. The circuit court held that rule No. 6 of the Department of Finance which required plaintiffs to pay a tax measured by the total receipts from their contracts was void, and enjoined the Director of Finance from collecting the tax so far as it was measured by certain items claimed by him to be properly included. As to the remaining items, the complaint was dismissed for want of equity. This is a joint appeal from that decree, prosecuted in the names of the original parties plaintiff and the intervening petitioners.

The plaintiffs and intervening petitioners (hereafter referred to as plaintiffs) are contractors employed by the Sanitary District of Chicago under written contracts for the construction of concrete sewers and tunnels and for the building of sewage treatment works. The contracts recite that they are for work and labor. The compensation for the construction of sewers is based upon linear feet. Two types of materials were used or consumed in the performance of these contracts: (1) temporary materials used for shoring and bracing, for the building of bulkheads and coffer-dams, and for the construction of railroads and voltage lines to be used by workmen and (2) the materials that

were consumed in the permanent structures—sand, cement, gravel, reinforcing steel and the like. The court below found that the materials of the first type remained the property of plaintiffs and were not subject to the tax. Thus, we are concerned only with that part of the decree which held taxable the materials which were incorporated in the projects themselves.

It was stipulated by the parties, as to the sewer contracts, that the cost of materials incorporated in them represented only twenty-five per cent of the total contract price and, as to the sewage treatment works, that the cost of such materials represented thirty-three and one-third per cent of that price. The court in its decree found that the completed structures could be used only by a governmental agency performing services similar to the sanitary district, and were not property of a type which is commonly bought or sold for commercial purposes. It also found that if the structures were razed, no salvage would be realized except as to certain moveable equipment, apparently referring in this latter connection to several manhole covers, the cost of which was negligible when compared with the total contract price, and to sludge removal machinery which was not furnished by plaintiffs. Notwithstanding these findings, the circuit court, as stated above, held that plaintiffs were liable for a tax measured by the cost of the sand, cement, gravel, steel and other materials entering into the permanent structures.

At the outset, it must be remembered that the tax here questioned is not a privilege tax imposed upon purchasers, like the Motor Fuel Tax, (*People* v. *Deep Rock Oil Corp.* 343 Ill. 388;) it is not a property tax upon the items sold; (*Winter* v. *Barrett*, 352 Ill. 441;) nor is it a sales tax, (*Reif* v. *Barrett*, 355 Ill. 104.) The tax involved here is an occupation tax upon a class of vendors and is measured by the gross receipts from their sales. (*Reif* v. *Barrett, supra.*) The question to be decided, and the one in-

volved in most of the previous cases under this act, is the exact type of vendor affected by it.

The original Retailers' Occupation Tax act was entitled "An act in relation to a tax upon persons engaged in the business of selling tangible personal property at retail," etc. (Laws of 1933, p. 938.) That act was held unconstitutional, (*Winter* v. *Barrett, supra,*) and the statute enacted to replace it was entitled "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." (Ill. Rev. Stat. 1937, chap. 120, pars. 440, *et seq.*) The title of the second act is broader than that of the first and we have held that "by the omission of the words 'at retail' from the title and the substitution therefor of the words 'to purchasers for use or consumption' the legislature made certain that the definition of 'sale at retail' in the present act is not limited by what was formerly contained as part of the title." (*Franklin County Coal Co.* v. *Ames*, 359 Ill. 178.) Thus, the class of vendors subject to the act must be determined from a construction of the provisions of the act itself. Section 2 provides that "a tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State," etc. Section 1 defines "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, *for use or consumption and not for re-sale* in any form as tangible personal property, for a valuable consideration." Not all vendors of personal property are subject to the act, however. The last paragraph of section 1 provides that "the isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as engaging in the business of selling such tangible personal property at retail does not constitute engaging in such business." We have eliminated, by construction, certain other types of vendors where the sales involved are a mere incident to the practice of a profession, (*Babcock* v. *Nudelman,*

*post,* p. 626,) or the performance of personal services requiring skill or artistic ability. (*Burgess Co.* v. *Ames,* 359 Ill. 427; *Adair Printing Co.* v. *Ames,* 364 id. 342; *A B C Electrotype Co.* v. *Ames,* id. 360.) On the other hand, where the services rendered are an inseparable part of a commercial transaction, the vendor is taxable if his business satisfies the other requirements of the statute. (*Brevoort Hotel Co.* v. *Ames,* 360 Ill. 485; *Swain Nelson & Sons Co.* v. *Department of Finance,* 365 id. 401.) But even if a substantial portion of a business is the selling of tangible personal property, it is not necessarily subject to the tax. Further refinements must be made. We have held that public utilities are not subject to the act (*Peoples Gas Light and Coke Co.* v. *Ames,* 359 Ill. 152) even though for some purposes at least, their commodities may be characterized as personal property. (*People* v. *Menagas, ante,* p. 330.) To determine whether building contractors, like plaintiffs here, are within the meaning of the act, reference must be made again to the definition of "sale at retail" provided by the legislature.

The merchandising process often involves several sales before an article reaches the hands of the ultimate consumer. Under the definition in section 1 only that person transferring the goods "for use and consumption and not for resale" is subject to the tax. The quantity sold is no test under this definition; (*Franklin County Coal Co.* v. *Ames, supra;*) it is the purpose for which the property is sold that is determinative. Under the contracts before us in this case, plaintiffs agreed to build sewers and buildings requiring the use of sand, gravel, cement and steel. They were the persons "using" these materials even though after their metamorphosis they became part of a structure whose title vested in the Sanitary District of Chicago. While in one sense, title to these materials passed from plaintiffs to the sanitary district, yet the niceties of property law have no place in the construction of a statute of this type. Plain-

tiffs did not hold themselves out as vendors of the materials furnished, nor did the sanitary district select or purchase the materials used although it set up certain requirements and specifications in its contract. The identity of the materials used in the construction was destroyed and, as properly found by the lower court, the completed structures had no commercial value as salvage or otherwise. What the Sanitary District of Chicago bought under its contract, if there was a sale at all, were sewers and sewage treatment works, completed and ready for use. Under these circumstances it would be unreasonable to characterize the transfer of the materials incorporated in the completed structures as a sale.

The Director of Finance relies upon our decisions in *Bradley Supply Co.* v. *Ames,* 359 Ill. 162, and *Blome Co.* v. *Ames,* 365 id. 456, to sustain his position. In the *Bradley case,* the installation of plumbing supplies and fixtures was involved and the transfers there are distinguishable from those in question here. The property transferred retained its original form; its design, no doubt, was subject to specifications made by the purchaser, and its use by the contractor was similar to that by the landscape architect, of his shrubs and plants, in *Swain Nelson & Sons Co.* v. *Dept. of Finance, supra.* The *Blome case* involved "contractors who agreed to furnish and install building materials and fixtures, to do excavating, make foundations, erect buildings, and make various kinds of repairs to buildings already built." It is directly in point here. We have reconsidered in this opinion the reasoning upon which part of that decision rests and no longer feel impelled to follow it. So far as that case applies to construction contractors who furnish labor and materials in excavating for basements, sewers, water mains or other purposes, or in the erection of foundations or buildings, or in the making of various kinds of structural repairs to buildings, the *Blome case* is expressly overruled.

We hold that there was no transfer of tangible personal property within the meaning of the act by plaintiffs to the Sanitary District of Chicago and that the plaintiffs are not subject to a tax. That part of the decree of the circuit court of Cook county which held plaintiffs subject to a tax is therefore reversed; in all other respects the decree is affirmed.

*Affirmed in part, reversed in part.*

Mr. CHIEF JUSTICE FARTHING, dissenting:

I cannot agree with the majority of this court. The opinion states that even if a substantial portion of an occupation is the selling of tangible personal property for use or consumption, such an occupation is not necessarily taxable, and that "further refinements must be made." This idea is sought to be supported by *Peoples Gas Light and Coke Co.* v. *Ames,* 359 Ill. 152. The basis of that decision was that the General Assembly did not intend to include public service companies in the act, and not that they did not deal in or make transfers of title to tangible personal property for use or consumption and not for resale. That decision, therefore, made no refinement of occupations which involve, as a major fraction of the business done in them, the transfer of tangible personal property for use or consumption, which related to such transfers. Next, after admitting that several sales may be made before an article reaches the hands of the ultimate purchaser or user, and that it is the purpose for which the property is sold that is determinative, it is held that the contractors are the ultimate consumers or users of the cement, sand, gravel, steel and other materials that went into the construction of sewers and other improvements on the property of the sanitary district. It is true that in mixing concrete, the sand, cement and gravel change their form and become a solid mass, but this is no greater metamorphosis than was dealt with in the food stuffs prepared and sold by the tax-payer in *Brevoort Hotel Co.* v. *Ames,* 360 Ill. 485. Some of the distinctive

features of our holding in the last named case are that the customer, and not the hotel, is the user of the food within the meaning of the act; that in almost every sale of tangible personal property there is a strong element of service, but the food, clothing, shoes, hat or other personal property bought is the substance of the transaction, and such a transfer of the title to the food is a transfer or sale within the meaning of the act, although, at common law, innkeepers were said to "utter" rather than sell victuals and fodder for man and beast, respectively.

Although our decision in *Blome Co.* v. *Ames*, 365 Ill. 456, is expressly overruled, the majority opinion lets stand what was decided in *Bradley Supply Co.* v. *Ames*, 359 Ill. 162, because in the latter case the plumbing fixtures and supplies used in installing plumbing largely retained their original form. In this connection the majority say: "Its design, no doubt, was subject to specifications made by the purchaser, and its use by the contractor was similar to that by the landscape architect, of his shrubs and plants, in *Swain Nelson & Sons Co.* v. *Department of Finance*, 365 Ill. 401."

In my opinion, neither the *Blome Co.* decision nor the *Bradley Supply Co.* decision should be overruled, but if either is to be expressly overruled, both should fall. Plumbing contractors are not distinguishable in their occupation from any other sort of contractors doing construction work. Whether their sales are of fixtures, pipe, lead or what-not, that has a great or a small value or no value as salvage, and whether their sales are of fabricated or unfabricated tangible personal property has no bearing upon the reasoning that should be applied to the occupations these persons engage in. The refinements that have crept into our decisions based on the fact that printing is said to be "one of the graphic arts;" that blueprint paper, when printed upon, is of no value to any one other than the purchaser; that letter-heads cannot be sold and are also of no value to any one except the customer who buys them; that electrotypes

have little salvage value, and that an optometrist may branch out from the professional part of his occupation and engage in the sale of spectacle frames, lenses, cases for glasses, etc., are all, in my opinion, wide of the mark. None of these sales are any the less transfers of tangible personal property for use or consumption and not for resale.

In my opinion, better reasoning is contained in *Cusick* v. *Com.* 260 Ky. 204, 111 A. L. R. 940, where the contention of a photographer was that his business consisted entirely of labor and was one of personal service, requiring science, skill and talent rather than an occupation involving the transfer of title to tangible personal property for use or consumption. In that case the Kentucky court said: "Coming to the argument that a photographer is engaged in selling service, and that service is not taxable, it must not be overlooked that the chief value of many articles consists in the cost of the service and skill by which they are produced, rather than the cost of materials out of which they are made. Moreover, the situation is not the same as if the patron took an article to another to be repaired and paid only for the service rendered. One who desires a photograph of himself or his family does not contract simply for service. He desires the finished article, and that is what he buys and what the photographer sells. It is true that the photograph is of a particular person, and that the market is limited, but that is more or less true in every case where clothing or other articles are made to order for a particular person, or a particular purpose, and are not regularly kept on hand."

What salvage value would there be, for example, in a suit of clothes made for and worn by any member of this court, after the suit had been worn, or in a partly eaten meal served to one of our number, or even in a photograph of any one of us?

In *People* v. *Graves*, 246 App. Div. 130, 284 N. Y. Supp. 906, the court said: "Here the relator was conducting the

business of putting on paper figures or designs, and offering sketches for sale, and each had an intrinsic value, albeit perhaps possessing an artistic quality or principle. The service expended was not of a personal nature, as the relator employed others to provide it; and the drawings were subsequently devoted to a useful industrial purpose. The relator was a purveyor of fabric designs, and its business was not different in principle from those who furnished special thread, implements or coloring dyes, or engraved plates, to meet the needs of industry."

In holding taxable the occupation of a construction contractor, and that there was a sale of the materials furnished to a municipal corporation in the construction of a dam, intake tower, settling basin, and filtering house, as part of the municipality's water-works system, the Supreme Court of Arkansas, in *Wiseman* v. *Gillioz*, 96 S. W. 2d. 459, said: "The city of Fort Smith unquestionably acquired this property from the contractor, and acquired it for the purpose of consumption and use, and not for resale. It is argued by appellees that the contractor was not selling any property. They refer to the *Louisiana case* as holding that the contractor does not sell cement, gravel, or sand, and they say that no title to personal property ever passed to the city. The title to the property was in the contractor, and the city of Fort Smith acquired title to that property. It acquired it for a consideration. Merely because the price of the property and the price of the labor were estimated together does not in any way affect the transaction so as to prevent its being a transfer of personal property to the city."

By placing the tax on those occupations engaged in by persons, firms and corporations making the last sale for use or consumption, the General Assembly wisely sought to protect, and intended to protect, dealers in every sort of materials used and consumed by the ultimate purchaser thereof. This protection is against competitors in like occupations who do an interstate business, which occupations are

expressly exempted. The majority opinion moves the incidence of the tax one step backward from the goal set up by the General Assembly, and the retail dealers must suffer loss because of the advantage given to competitors who do an interstate business, if the majority opinion remains the law.

For these reasons, I must dissent.