(No. 24882.—)

THE PEOPLE *ex rel.* Herlihy Mid-Continent Company, Appellee, *vs.* S. L. NUDELMAN, Director of Finance, *et al.* Appellants.

*Opinion filed December 19, 1938.*

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, of counsel,) for appellants.

T. A. SHEEHAN, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

From March 1, 1935, to July 1, 1937, the relator, the Herlihy Mid-Continent Company, was engaged in the construction of three projects for the Sanitary District of Chicago. Effective on March 1, 1935, the Department of Finance adopted amended rule No. 6, which specified that contractors such as relator were required to pay the tax imposed by the Retailers' Occupation Tax act. In compliance with this rule relator paid the tax in dispute. In June, 1936, relator sued to enjoin the Department of Finance from collecting further taxes claimed to be due on account of the performance of two of its contracts with the Sanitary District of Chicago. In *Herlihy Mid-Continent Company* v. *Nudelman,* 367 Ill..600, we held that, in the performance of these contracts there was no transfer of tangible personal property, within the meaning of the Retailers' Occupation Tax act, from the company to the Sanitary District of Chicago. On March 9, 1938, relator made a written demand on the Director of Finance for a refund of $25,483.21 of taxes paid by it prior to the decision in .the *Herlihy case.* In its demand relator stated that it was not then and would not in the future be liable for the occupation tax. It claimed a cash refund under section 6 of the Retailers' Occupation Tax act, for the reason that it could not use the credit therein provided. The Department of Finance rejected its demand. Thereupon relator filed this complaint in *mandamus* in the circuit court of Cook county to compel the Director of Finance to approve its claim for refund and to issue and certify a voucher for the amount due it, to compel the Auditor of Public Accounts

to issue and sign, and the State Treasurer to countersign and deliver, a warrant to relator for the amount due. By their answer appellants admitted that relator was not liable for the $25,483.21 taxes it had paid; that the Director of Finance had refused the demand; that the amount demanded was correct; that $75,804.08 remained unexpended out of the $100,000 appropriated to refund erroneous tax payments, and that a credit to be applied in payment of future taxes would be of no avail. The circuit court awarded the writ as prayed, and the case is before us on direct appeal because the revenue is involved.

Appellants contend (1) that relator has failed to bring itself within the refund provisions of the Retailers' Occupation Tax act, and (2) that even if relator were entitled to a refund, the Director of Finance is not bound to pay relator's claim before paying claims which have been filed and approved in accordance with the rules of the department prior to relator's demand.

Section 6 of the Retailers' Occupation Tax act (Ill. Rev. Stat. 1937, chap. 120, par. 445) provides: "If it shall appear that an amount of tax, penalty or interest has been paid which was not due under the provisions of this act, whether as a result of a mistake of fact or an error of law, then such amount shall be credited against any tax due, or to become due, under this act from the person who made the erroneous payment, or such amount shall be refunded to such person by the department." Appellants say, since this section provides for refunds of taxes, it should be strictly construed against the taxpayer. They insist that the phrase "If it shall appear that an amount of tax * * * has been paid which was not due under the provisions of this act," etc., should be interpreted to apply only to cases where the tax was not due from any one; that in *Herlihy Mid-Continent Company* v. *Nudelman, supra,* we held that the tax was due from the materialman and, therefore, relator is not entitled to a refund. They say that this con-

struction was adopted by the Department of Finance as early as March 1, 1935, and if there is any doubt as to the meaning of section 6 it should be resolved in favor of the department.

We cannot agree that this construction had been adopted. On March 1, 1935, when the Department of Finance rule No. 6 became effective, that department issued a bulletin which read in part: "The Department of Finance will not require contractors to make returns and pay the tax retroactive to July 1, 1933, *provided* that the contractors have previously paid all invoiced items on account of tax to supply houses, and that an audit discloses that the supply houses have in fact paid the tax to the State, and do not make claim for refund thereof." This bulletin indicates the department doubted that its construction of the statute was correct, because it inserted in the bulletin a saving clause to protect itself in case refunds were demanded by and paid to supply dealers who had erroneously paid the tax.

In construing a statute we must seek to ascertain and give effect to the intention of the legislature. While it is true that refunding statutes are construed most strongly against the taxpayer (*Burley* v. *Lindheimer*, 367 Ill. 425) we should not apply that rule where the language of the statute is clear and unambiguous. We think that section 6 of the act allows a refund or credit to persons who paid the tax under a mistake of law or fact regardless of the tax liability on the part of others. The Retailer's Occupation tax is a tax on the privilege of engaging in the business of selling tangible personal property to purchasers for use or consumption and is not a tax on the property itself. (*Reif* v. *Barrett*, 355 Ill. 104.) The privilege exercised by the supply dealers is different from that exercised by relator. It cannot be contended that relator paid or should have paid the tax due from the supply dealers. If appellants' contention were sustained injustice would result. Section 6 does

not provide under what circumstances a cash refund shall be allowed rather than a credit. It says "Such amount shall be credited against any tax due, or to become due, under this act from the person who made the erroneous payment, or such amount shall be refunded to such person by the department." This means that a refund should be allowed where a credit would be of no value.

Appellants contend that a writ of *mandamus* should not issue where it will not promote substantial justice; that to construe section 6 of the act as contended for by relator would result in injustice, in that relator would be enriched at the expense of the supply dealers who had no reason to believe, at the time the tax was due, they would be required to pay the occupation tax. There is no evidence to show that this result would follow.

Appellants next contend that the writ should not issue because confusion, disorder and a drain on the State's finances will result. They say that enormous refunds will be demanded by other construction companies which will have to be paid out of future appropriations. This argument assumes that such appropriations will be made but this is a matter for the legislature and no confusion or drain on the State's finances inevitably follows. Where the relator shows a clear legal right, the court has no discretion in respect to granting the writ. (*People* v. *Kelly,* 361 Ill. 54; *Illinois Central Railroad Co.* v. *People,* 143 id. 434.) *Mandamus* is the proper remedy to compel the issuance of a warrant for refunding taxes erroneously paid to the State, where a statute expressly makes it the duty of the Department of Finance to refund such payments. Appellants have admitted all material and necessary facts required to establish relator's claim. The only question is: "Did relator bring itself within the provisions of section 6? Where, as here, the amount is not in dispute or is liquidated, this question can be determined in a *mandamus* suit. *People* v.

*Stevenson,* 272 Ill. 215; *United States* v. *Ickes,* 73 Fed. (2d) 844, 849; *State* v. *Cutler,* 95 Pac. 1071, 1074.

Appellants contend that relator cannot recover because the approved claims exceed the $100,000 appropriated, but the approved claims were for credits and only $25,000 has been paid in cash refunds. There is no showing that there is not a sufficient fund remaining to pay this claim. *People* v. *Kelly, supra.*

Appellants finally contend that relator did not file its claim in compliance with article 19 of the rules of the department. That article provides, under the heading of "Credit for overpayment": "Article 19. Where a taxpayer under the Retailers' Occupation Tax act pays to the Department of Finance an amount of tax, penalty or interest not due under the provisions of the act, either as the result of a mistake of fact or an error of law, such taxpayer should file claim for credit on the form provided by the department for that purpose. In cases where claim for credit is approved, the department will issue a credit memorandum in the amount of the overpayment, which credit may be applied by the taxpayer in satisfaction of subsequent tax liability.

"In no case is an overpayment of tax, penalty or interest made during any prior month deductible from any item on a return filed by the taxpayer for any subsequent month, without being supported by a proper credit memorandum."

This provision applies only to claims for credit. While the department, under section 12 of the Retailers' Occupation Tax act, might make reasonable regulations with respect to claims for cash refunds, it has not done so. Thus, where relator claims only a refund, and the department admits that a credit would be of no value to it, as it does here, it would be futile to compel relator to seek a credit.

The judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*