Louis Leader, Plaintiff, *v.* Patrick J. Cullerton, Assessor, Cook County, *et al.,* Defendants.—Chicago Title & Trust Company *et al.,* Plaintiffs, *v.* Patrick J. Cullerton, Assessor, Cook County, *et al.,* Defendants.—(Lowell J. Myers *et al.,* Petitioners-Appellees and Cross-Appellants; Continental Illinois National Bank and Trust Company of Chicago *et al.,* Objectors-Appellants and Cross-Appellees.)

(No. 59309;

First District (1st Division)—December 16, 1974.

Sherwood K. Platt, George V. Bobrinskoy, Jr., and Fern C. Bomchill, all of Chicago (Mayer, Brown & Platt, of counsel), for appellants, cross-appellees Continental Illinois National Bank & Trust Co. of Chicago, United Air Lines, Inc., Kelly Springfield Co., and Holiday Inns, Inc.

Francis J. Mahon, of Chicago (McConnell, Mahon & Borst, of counsel), for appellant, cross-appellee Addressograph-Multigraph.

D'Ancona, Pflaum, Wyatt & Riskind and Arvey, Hodes & Mantynband, both of Chicago (Abner J. Mikva, Merrill A. Freed, Morton Denlow, Sidney R. Zatz, and Herman Smith, of counsel), for appellees, cross-appellants D'Ancona, Pflaum, Wyatt & Riskind and Arvey, Hodes & Mantynband.

Lowell Myers, *pro se.*

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

In 1969, the Illinois Legislature amended section 26 of the Revenue Act of 1939. (Ill. Rev. Stat. 1969, ch. 120, par. 507.) The amendment

provided for a use tax upon the lessee of previously exempt property. Assessment notices totalling almost $17 million were issued by the assessor of Cook County. Thereafter, two separate class-action suits were filed in the circuit court attacking the amendment's constitutionality. The first was Leader v. Cullerton, which was filed by attorney Lowell J. Myers on March 18, 1970. The second suit was Chicago Title & Trust Company v. Cullerton, which was filed by the firm of D'Ancona, Pflaum, Wyatt & Riskind (hereafter the D'Ancona firm) and thereafter consolidated with the Leader case. Additional parties intervened, represented by the firm of Arvey, Hodes & Mantynband (hereafter the Arvey firm).

On June 28, 1971, Judge Daniel A. Covelli declared the amended taxing statute unconstitutional but allowed the county taxing authorities to collect the taxes pursuant to the Act during the pending appeal of his order, provided that such taxes were segregated and retained in a special fund. He also held that the case was a proper class action and retained jurisdiction for the purpose of determining the distribution of the special fund and reasonable attorneys' fees. The county filed a notice of appeal to the supreme court on July 15, 1971.

On July 19, 1971, Lowell Myers mailed a copy of the decree to each taxpayer listed in the county tax book. He included a letter that, in part, suggested that each taxpayer should immediately contact its attorney. Subsequently, 70 separate taxpayers made payments totalling $4,785,-883.25 into the special fund. Several of the companies endorsed their checks to the county specifying that the payments were made subject to Judge Covelli's decree. Among those paying were the objectors: Continental Illinois National Bank & Trust Company of Chicago, United Airlines, Inc., Kelly Springfield Company, and Holiday Inns, Inc., represented by one law firm (hereafter this group of objectors will be referred to as "Continental Bank"); Quinlan and Tyson, as agents, and Chandler's, Inc., represented by another law firm; and Addressograph-Multigraph Corporation (hereafter Addressograph), represented by a third law firm. On August 27, 1971, the supreme court denied the county's motion to modify the decree by eliminating the provisions which created the trust fund. The attorneys for the objectors did not actively participate in the appeal in any way, but a member of the firm representing Continental Bank was present at the hearing on the county's motion to modify the decree.

On December 11, 1972, the supreme court rendered an opinion in these consolidated cases and another original action which had been filed in the supreme court, holding that the statute was unconstitutional and that the case was a proper class action. (Dee-El Garage, Inc. v. Korzen, 53 Ill.2d 1, 289 N.E.2d 431.) On December 21, the attorneys

representing the plaintiffs (hereafter the "petitioners") filed a petition for fees seeking 25% of the amount of the segregated funds. Objections and answers were filed and after a hearing the court fixed reasonable attorney's fees at 15% of the special fund to be divided equally between the lawyers. The objectors have appealed from the award of 15% and the petitioners have cross-appealed from the order denying their claim for 25%. The other 63 taxpayers have not appealed and the order is final as to them.

The objectors contend that the petitioners are not entitled to any fees from their clients or, alternatively, that the award of 15% is grossly excessive. The objectors rely on three cases in support of their argument that the petitioners are not entitled to any fee: *Hoffman v. Lehnhausen,* 48 Ill.2d 323, 269 N.E.2d 465; *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority,* 51 Ill.2d 126, 281 N.E.2d 338; and *Doran v. Cullerton,* 51 Ill.2d 553, 283 N.E.2d 865. In *Hoffman,* the court declared a homestead exemption unconstitutional. In *Rosemont,* the Highway Trust Authority Act was declared unconstitutional because it created a State debt in excess of $250,000 without a referendum. The trial court sought to require the individual defendants in their capacity as elected State officials to pay the plaintiffs' attorneys' fees. In *Doran,* the court found that the homestead exemption did not violate the 1970 constitution. All three cases denied attorney's fees on the ground that no tax money had been collected and, therefore, that there was no fund created by the plaintiffs.

The objectors argue that these cases are applicable because, they say, there is no fund here "brought into court by the efforts of petitioning attorneys nor a fund created for the benefit of the entire class." The answer to the objectors' argument is that the fund was in fact brought into court by the efforts of the petitioners, and the class did benefit from its creation. It was Myers who filed the original complaint, later joined by the other petitioners, long before the original action of *Dee-El Garage v. Korzen* was filed in the supreme court. If the trial court had upheld the constitutionality of the Act, it would have had little reason to create a fund.

The objectors, along with 63 other taxpayers, paid into the fund; 110 others did not pay. Those that did not, assuming they received notice, gambled on the outcome of the case in the supreme court. If the case had been reversed, those who had not paid would have been subject to penalties and interest and perhaps loss of their leases. It is also fairly arguable that, even if they paid the county or township under protest and the decree was affirmed, they would have lost the entire payment. (*Cf. Weil-McLain Co. v. Collins,* 395 Ill. 503, 71 N.E.2d 91; *People ex*

*rel. Herlihy Mid-Continent Co. v. Nudelman,* 370 Ill. 237, 18 N.E.2d 225; *People ex rel. City of Highland Park v. McKibbin,* 380 Ill. 447, 44 N.E.2d 449; 32 I.L.P. *Revenue* § 237 (1957).) The objectors knew that the trust fund was made subject to attorneys' fees by the terms of the decree before they made any payments into it. They did not seek to intervene nor to withdraw from the class. The petitioners prepared the decree which preserved and protected the fund.

■■ In *Flynn v. Kucharski,* 59 Ill.2d 61, a taxpayer filed a class action which successfully challenged the constitutionality of the method of tax collection in effect in Cook County. The result was that tax money previously paid to township collectors was required to be paid to the county collector. The fund which was created during the litigation was tax money and, regardless of the outcome of the suit, would remain tax money to be disbursed for public purposes by either the township or the county. The plaintiffs petitioned for fees and the objectors cited two of the cases cited by the objectors here, *Hoffman v. Lehnhausen* and *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority.* The supreme court, in distinguishing those cases and upholding the allowance of fees, perforce impliedly held that the fund had been created through the efforts of the plaintiffs. We see no difference between the efforts of the plaintiffs in the *Flynn* case from those in this case with respect to the creation of the fund.

All of the objectors now before us minimize the benefits accruing to their clients by the creation of the fund. In the trial court, however, the written objections before Judge Covelli by Continental Bank stated:

> "The intervening taxpayers made their payments under this protective order in order to avoid the imposition of interest or penalties in the event the leasehold use tax should be upheld."

At the hearing, Continental Bank's attorney said:

> "That lease [Continental Bank] is a valuable lease. * * * I think our lease is a 198-year lease. Anyhow, we did not want to take any risk of losing it; neither did United or Flying Tiger want to lose their hangar's lease from the City of Chicago. They thought discretion the better part of valor to pay the taxes, and to avoid any possibility of a default under their leases. The same goes for my other client, Kelly Springfield, which had a new lease on a warehouse out here in Des Plaines, and for those reasons we paid the taxes."

The attorney for Chandler's said: "If they [Chandler's] didn't pay the tax, they might lose their property."

Although all the objectors, save Addressograph, conceded in the trial

court that the only issue was the reasonableness of the fees, the petitioners have not raised any question of waiver in this court, nor shall we do so. But it was apparent to those objectors cited, and it is to us, that the fund did provide a benefit to all members of the class. We are not persuaded to hold otherwise by the argument of Addressograph, which admittedly paid voluntarily, that the amount of penalty for failure to pay would have been less than the fees and that "the possibility of losing the lease might well have been resolved by a deposit in escrow *if* the lessor insisted." (Emphasis added.) The lessor might, on the other hand, have declared a forfeiture, insofar as we can determine from this record.

■■ The objectors also maintain that they never expected to be charged for the services of the petitioners. The objectors knew that this was a class action and that their clients would be bound by any decree. They knew from the complaint that reasonable attorney's fees were sought, as they are in virtually all class actions. They knew that the decree specifically provided that the court retained jurisdiction for the purpose of determining attorney's fees. Yet they did nothing to assist in the appeal for the apparent reason that they did not believe the decree would be upheld in a court of review and that any effort and expense on their parts would be wasted. Of the amount paid into the fund, totalling almost $5 million, Continental Bank alone contributed almost 30%. It is unreasonable to conclude that they did not expect that the petitioners representing all the members of the class, if successful, would not look to their clients for fees. We conclude, therefore, that the fund came into being through the efforts of the petitioners, that it was beneficial to the objectors, and that it was not a fund created, as the objectors suggest "solely for the payment of attorney's fees." Consequently, we judge that the argument that the petitioners are entitled to no fee is untenable, and it would be manifestly inequitable to hold otherwise.

The petitioners presented three expert witnesses, the qualifications of whom are not questioned. Philip Corboy, Manuel Cowen, and Lowell Sachnoff each testified that he had personal experience with class-suit litigation. Corboy and Cowen testified that in their opinion 25% of the funds would be a reasonable fee; Sachnoff fixed the percentage at 25% to 33%. The objectors presented no expert witnesses. Their sole witness was Gerald L. Johnson, the president of Chandler's, Inc., who testified that he understood that Myers was representing him and that he expected to be assessed a fee out of the money he had paid.

■■ In *Flynn v. Kucharski*, 59 Ill.2d 61, the court quoted with tacit approval the factors the trial court considered in determining reasonable attorneys' fees in a class-action tax case: The novelty, complexity and

difficulty of the case; the contingent nature of the fee; the benefit to the class and to the public; the skills and qualification of counsel; the time and labor expended and the responsibility undertaken.

The difficulty facing the petitioners when they first brought their actions is illustrated by the observation of the attorney for Continental Bank to Judge Covelli: "[W]e frankly thought the Supreme Court would disagree with Your Honor * * *." His statement was commendably candid and understandable. A similar statute had been upheld by the Supreme Court of Michigan (*United States v. City of Detroit* (1956), 345 Mich. 601, 77 N.W.2d 79) and the Supreme Court of the United States (*United States v. City of Detroit*, 355 U.S. 466, 2 L.Ed.2d 424, 78 S.Ct. 474). There was no clear Illinois precedent, and the complexity of the case is evident from a reading of the *Dee-El Garage* opinion, which, it should be noted, had two Justices dissenting. No case has been called to our attention involving an attack on the constitutionality of a revenue statute that was not relatively novel, difficult and complex.

Myers' fee arrangement with Leader was contingent on the amount recovered: If Leader received nothing, Myers received nothing. To date Myers has received no money. The other two petitioners have agreed to bill their clients for the percentage fixed by Judge Covelli. The D'Ancona firm has thus far received an advance of $13,000, and the Arvey firm has received $11,300 from each of its two clients. The petitioners have expended in the aggregate approximately 1650 hours. The normal billing rate for Myers was $100 per hour for "a wealthy client" in a tax matter, the billing rate for the D'Ancona firm ranged from $30 to $75 per hour, and that of the Arvey firm was between $60 and $75 per hour. The two firms and Myers had agreed to divide any fee three ways.

■■■ No question has been raised as to the experience and competency of the petitioners. We have examined the trial record and the briefs submitted in this court and have heard oral arguments. All counsel on both sides have represented their clients with vigor and legal ability to a high degree, but we reject out of hand any assertion that the notices sent by Myers to the individual taxpayers "approached overt deception," that it was "aimed at misleading" the class he represented, that it was "a deceiving warning," or that the resistance to the State's Attorney's motion in the supreme court to change the order creating the fund was a "subterfuge." If the county's motion had been allowed, there would have been no fund, and the absence of a fund has often been assigned as a ground for dismissal of a class action. (See *Perlman v. First National Bank*, 15 Ill.App.3d 784, 305 N.E.2d 236; *Hagerty v. General Motors Corp.*, 14 Ill.App.3d 33, 302 N.E.2d 678; *Reardon v. Ford Motor Co.*, 7

Ill.App.3d 338, 287 N.E.2d 519.) Significantly, the objectors had notice of the motion and Continental Bank's attorneys had an observer present at the hearing, but none of the objectors joined in the motion. Further, we see nothing opprobrious about a lawyer seeking to be paid for his work, and it may not be said here that the petitioners are "greedily seeking vast additional sums."

The benefit to the class is self-evident: It is not required to pay the tax. Addressograph argues that the class may be back-taxed. But the new tax, which the petitioners successfully challenged, is three to four times greater than the previous one.

■■ The general rule provides that the awarding of attorney's fees is a matter within the discretion of the trial court and a reviewing court will not interfere unless that discretion has been clearly abused. (*Hofing v. Willis,* 83 Ill.App.2d 384, 389, 227 N.E.2d 797.) In the exercise of its discretion the trial court should not disregard any of the factors we have previously noted. The objectors point to a remark made by the trial court as an indication that it abused its discretion by ignoring the element of time and labor. During the cross-examination of a member of the D'Ancona firm who testified, in part, to the amount of time expended by various members of the firm, the court said: "This is not a quantum meruit procedure. They are asking 25%. If they put in 25 minutes, they still want 25%. This being a contingent basis, if they put in 25 minutes they still want 25%. So I think we're wasting time when we are talking about hours."

■■ On this point, the objectors cite *Flynn v. Kucharski,* 59 Ill.2d 61, wherein the court held that "the time expended in such a case [class action] is not to be relegated to a secondary or minor position; it is a highly significant factor in determining the fee." The Supreme Court reduced an award of 15% of $5 million (not $20 million, as the objectors maintain) to 11.2%. But the reduction was based on the failure of the attorneys to keep records on the amount of time they spent on the case, although they testified that they had each expended over 3700 hours over a 4½-year period. The case is of no assistance to the objectors' position here because there is no suggestion that adequate records were not kept by the petitioners.

Whether the remarks of the trial court, in the context they were made, may be construed as the objectors maintain is problematical. The fact is that the court heard evidence of time expended on behalf of the petitioners, each of whom acknowledged that time expended was a factor for consideration. But we fail to see how the trial court's refusal to consider time, if indeed he did, can redound to the objector's benefit. In other words, the petitioners, in effect, got nothing for their time; and

if that increment were added to the other factors, the judge, to be consistent, should have given them more than the 15% awarded.

██ Assuming, however, for the sake of argument, that the trial court erroneously ignored the time expended, we would, as the objectors point out is our right, exercise our independent judgment. In our view, taking all the factors into consideration, 15% of the amount of the segregated fund represents an equitable fee. The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE and HALLETT, JJ., concur.